FOURTH DIVISION
September 21, 2006

No. 1-04-2950

| | | |
|---|---|---|
| WENDY WEISMAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| SCHILLER, DUCANTO AND FLECK, LTD., | ) | |
| | ) | Honorable |
| | ) | Allen S. Goldberg, |
| Defendant-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Plaintiff Wendy Weisman sued defendant Schiller, Ducanto, & Fleck, Ltd. (SDF), for negligent representation of her interests during divorce proceedings against her former husband, Larry Weisman (Larry), where SDF allegedly failed to conduct adequate discovery on the value of the marital estate and to present expert witnesses. Following a jury trial, a verdict was entered for SDF, and plaintiff appealed. On appeal, plaintiff contends that the verdict was against the manifest weight of the evidence and alleges that the trial court made several errors.

BACKGROUND

The record shows that plaintiff and Larry married in February 1979. Thereafter, in the summer of 1980, Larry formed the law firm Goldberg, Weisman & Fohrman with Michael Goldberg and Donald Fohrman, which later became Goldberg, Weisman & Cairo

No. 1-04-2950

(GWC) following Fohrman's departure.

In October 1986, Larry filed for divorce but quickly dismissed that action. He then refiled for divorce in April 1992, at which time plaintiff retained the services of SDF. Upon request, SDF received financial documents from Larry dating back to 1987, including annuity contracts, investment statements, and bank statements. Arnold Stein, an attorney at SDF, then deposed Larry on August 25, 1992, and questioned him about his disclosed financial documents. However, in the fall of 1993, Larry again dismissed the divorce action after plaintiff received treatment for her drug use at the Betty Ford Clinic.

In January 1994, plaintiff filed for divorce, and after a failed attempt at reconciliation, she told SDF to proceed with the marital dissolution action. Larry then filed a petition for order of protection on April 26, 1994, which the circuit court granted in an emergency order, and on April 27, 1994, he also filed for divorce.

On May 5, 1994, SDF filed a notice to produce and a notice of deposition on Larry. A limited discovery deposition of Larry was conducted on May 12, 1994, which primarily concerned the order of protection, child support, and attorney fees. Larry, however, failed to fully comply with SDF's production request for financial documents. As a result, SDF filed a motion to compel on June 13, 1994. Larry never responded to that motion and no hearing was ever held on it.

No. 1-04-2950

On June 27, 1994, however, Larry sent SDF financial records that which he claimed were for settlement purposes only. The documents included a handwritten financial statement of assets stating his net worth was $4,485,347, various promissory notes, and a notice of his participation in a profit-sharing plan at GWC for the 1993 year. Despite viewing the financial statement as incomplete, SDF sent Larry a settlement proposal on August 2, 1994. SDF estimated Larry's net worth to be $6.5 million based on his financial disclosures and the buy-sell agreement he had with GWC, which asserted that he would receive $1.2 million upon his departure. SDF requested $3.3 million in value of the marital estate, but Larry rejected the proposal.

In September 1994, Larry filed a motion to close discovery, and SDF filed a response that set forth in detail the documents it received from Larry and the documents it still sought. SDF noted in its response that Larry never fully complied with its production requests. The trial court granted Larry's motion and ordered all discovery to be closed on January 5, 1995, and set the trial for February 27, 1995.

Three weeks after the trial court granted Larry's motion to close discovery, SDF sent Larry another request for discovery and disclosure of expert witnesses. In response, Larry sent SDF another handwritten financial statement, dated November 18, 1994, which again noted it was for settlement purposes only. The statement showed he had a net worth of $4,312,567 but no value

No. 1-04-2950

was listed for his interest in his law firm, GWC.

SDF asked the trial court for expert witness fees to hire an expert to value Larry's law practice. Larry provided $5,000 for a retainer for an expert and SDF hired Willamette Management Associates (Willamette).

In November 1994, Willamette sent SDF a list of documents it needed to formulate an opinion as to GWC's value. SDF forwarded that list to Larry in December 1994, and asked him for still outstanding discovery and expert witness disclosures. On December 20, 1994, Larry's attorney sent SDF a letter which disclosed expert witness Robert Robertson of Coopers & Lybrand, Ltd., who had been retained to value Larry's interest in GWC. The letter did not include a valuation of GWC even though Robertson had previously valued each partner's interest in GWC during the 1991 partnership dissolution case brought by former partner Fohrman.[1] SDF was aware of that previous valuation, but

---

[1]Fohrman had sued the firm upon his departure, and the trial court held that he was only entitled to the $1,200,000 provided by the firm's buy-sell agreement. This court affirmed that ruling on appeal. Forhman v. Goldberg, No. 1-93-1546 (1995) (unpublished order under Supreme Court Rule 23). However, Robertson's analysis, which is found in the record, concluded that as of January 15, 1991, the fair market value of Fohrman's alleged 32.4886% interest in GWC was $350,000. At the time, Larry also had a 32.4886% interest, which increased after

Willamette had not yet valued Larry's interest in GWC.

On December 28, 1994, plaintiff sent Stein a letter which informed him that she was dismissing SDF as counsel. In that letter, plaintiff informed Stein that he "had been great" but that she felt a change was necessary. She then retained the services of Kaufman, Litwin, & Feinstine (KLF) as counsel.

Prior to its January 13, 1995, withdrawal, SDF filed a motion to extend discovery and to continue the trial on January 5, 1995. In that motion, SDF rejected Larry's contention that his interest in GWC was of no value and asserted that Willamette had not yet valued Larry's interest. Further, SDF noted that Larry had not produced all requested financial documents. The trial court denied SDF's motion.

SDF also wrote to KLF on January 4, 1995, and January 11, 1995, asking them to retrieve plaintiff's file, which KLF did on January 18, 1995. Those files included the parties' tax returns from 1989 to 1993 as well as GWC's tax returns for those years.

Meanwhile, KLF also filed a motion to extend the discovery cutoff date and to continue the trial date, which the trial court denied. However, the trial court entered an order by agreement

Fohrman's departure.

that Larry would appear for a deposition by January 31, 1995.

On January 20, 1995, Larry's attorney responded to KLF's notice of the deposition and the attached request for documents spanning six years by informing KLF that all relevant documents had already been produced. Subsequently, on January 26, 1995, Larry appeared for a deposition and presented updated versions of the documents he had previously provided SDF. During the deposition, Larry testified as to his assets, which included $2.62 million in a money market account with Mesirow Financial, $80,000 deposited with Fidelity, $30,000 in a personal checking account at Midcity Bank, two other accounts valued under $2,000, and an individual retirement account (IRA) worth about $36,000. Larry valued the couple's home at $580,000 and stated that it was fully paid for. He also testified that he earned $1.265 million in 1994 and provided details as to other business deals and loans, including financial dealings with GWC.

KLF was aware of Larry's interest in GWC. KLF was also aware that Fohrman received $1.2 million following his lawsuit upon his departure from the firm. The record contains a letter between partners of KLF, which suggests that the firm believed that the $1.2 million in the buy-sell agreement represented the value of Larry's interest in the firm for purposes of marital property division and distribution.

On February 25, 1995, at the advice of KLF, plaintiff settled her marital dissolution case with Larry out of court.

Plaintiff received approximately $3,103,747 in the settlement, which consisted of $2,070,000 in assets and $1,033,747 in non-modifiable maintenance to be paid in varied sums over 10 years. At the prove-up hearing, Larry stated that all of his assets were set forth in the settlement agreement and acknowledged that he had made over $1 million each of the previous three years.

Thereafter, SDF filed a fee petition for its services, and the trial court ordered plaintiff to pay SDF $26,216.15 for the dissolution proceedings and $28,659 for the order of protection proceedings.

Plaintiff then filed a legal malpractice lawsuit against defendant. The trial court, however, dismissed that action under the doctrine of *res judicata* because plaintiff had raised the issue of legal malpractice in response to plaintiff's fee petition action. This court reversed that ruling on appeal (Weisman v. Schiller, DuCanto, & Fleck, 314 Ill. App. 3d 577 (2000)) and remanded the case for trial.

During the subsequent jury trial, plaintiff testified first and acknowledged that she took quaaludes during her marriage because they helped her cope with her sense of loneliness. She stated that she knew she had to quit using drugs in order to "concentrate on her kids." Plaintiff received care at the Betty Ford Clinic and worked with a therapist thereafter.

Plaintiff's testimony further related that she worked as a paralegal at GWC prior to having her and Larry's two children.

Plaintiff detailed her care of their household following the birth of the children, including driving the children to school and personal appointments and buying their clothes. She concluded her direct testimony by presenting and describing several family pictures.

On cross-examination, although the trial court disallowed defense counsel from reading from the 1994 protective order entered against plaintiff, it permitted questioning as to plaintiff's drug use despite her counsel's objection. During a side bar, the trial court informed counsel that it was permitting such questioning because plaintiff placed her credibility in question on direct examination by presenting a scenario of "a mother who had idyllic relationships with her children."

Stephen Katz, a partner at SDF, also testified in plaintiff's case-in-chief. He acknowledged that a full financial deposition of Larry was not conducted during SDF's representation and also confirmed that the expert disclosures in plaintiff's underlying case were not filed 60 days before the February 27, 1995, trial date, which put SDF at risk for being barred from offering expert testimony.

On cross-examination, Katz stated that he believed that a full financial deposition of Larry was conducted by successor counsel. He further stated that attorneys often agree to do discovery after the discovery cutoff date, and that he felt that the judge did not provide enough time to conclude discovery prior

No. 1-04-2950

to the February 27, 1995, trial date.

Plaintiff then called Stein as an adverse witness pursuant to section 2-1102 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1102 (West 2004)). Stein testified as to his knowledge of the law applicable to divorce proceedings and SDF's representation of plaintiff.

In addition, plaintiff presented the testimony of successor counsel Glen Kaufman, a partner at KLF, and Joseph Mirabella, an experienced divorce lawyer. Kaufman asserted that SDF's representation forced KLF to recommend that plaintiff settle her divorce case for the stated amount. Mirabella in turn testified that he believed that SDF deviated from the proper standard of care in its representation of plaintiff. However, on cross-examination, Mirabella admitted that he had not reviewed the entire record of the underlying case.

Finally, plaintiff called Michael Goldman to testify as an expert on firm valuation. Goldman intended to testify as to his report on GWC's valuation, which he found to be $7,902,000 as of December 31, 1994. Prior to trial, however, the trial court granted SDF's motion *in limine* to bar much of that testimony and limited his testimony as to his analysis of the 1991 Coopers & Lybrand valuation report. The trial court reached that ruling after finding that Goldman's report incorporated enterprise goodwill, which was not recognized at the time of SDF's representation. The trial court stated in pertinent part:

No. 1-04-2950

> "But it seems to me that before I allow that to be done in this case, there ought to be some law at the Supreme Court level, and there ought to be law at the Supreme Court level at about the time that the Schiller, DuCanto & Fleck firm was being held to know this law and to apply this law and to advocate for Wendy Weisman the concept of enterprise goodwill.
>
> So for that in mind, I will bar Mr. Goldman from testifying to enterprise goodwill, and I'll grant the motion *in limine* regarding that."

The trial court upheld that ruling at trial after conducting a *voir dire* of Goldman. In addition, the trial court barred Goldman from testifying as to a new valuation he derived following the *voir dire* since that valuation was not disclosed prior to trial. The court stated, "I will allow him to testify as originally planned, whatever you planned to testify on direct limited to this Coopers & Lybrand report, let you cross-examine."

Subsequently, Goldman testified that in analyzing the 1991 Coopers & Lybrand report, he took the numbers therein, carried them forward to December 31, 1994, and found the value of the firm to equal $4,155,000. Goldman determined that Larry's 48% share of the firm was worth roughly $2 million.

˘10˘

No. 1-04-2950

SDF then presented its case-in-chief. SDF first called Larry, plaintiff's ex-husband, who testified as to his marriage with plaintiff. During his testimony, he alleged that plaintiff contributed little to the marriage, which he attributed to her drug use.

SDF also presented the testimony of Timothy Cummins, who testified as to a report he prepared while he was a managing director in the "Valuation and Litigation Advisory Services Group" of Stout Risius Ross, Inc. The report concerned Larry's 48% interest in GWC, which Cummins determined to amount to $1.2 million pursuant to the buy-sell agreement between the partners.

SDF then sought to present the video evidence deposition of James Feldman, a partner at Jenner and Block, who reviewed Larry's financial information on behalf of defendant. Prior to the jury viewing the video, however, plaintiff made several objections as she argued that Feldman presented opinions during his evidence deposition that he had not disclosed during his discovery deposition or in his Rule 213 interrogatory answers (Official Reports Advance Sheet No. 8 (April 17, 2002), R. 213, eff. July 1, 2002). Following the court's rulings on those objections, SDF played the video for the jury.

During his evidence deposition, Feldman noted that pursuant to the supreme court's ruling in In re Marriage of Zells, 143 Ill. 2d 251, 256 (1991), which was the law at the time of the

No. 1-04-2950

underlying divorce, it was "not appropriate for a number of reasons to value professional goodwill, that is, to try to place a number on what someone's earning potential is." He stated that he had handled divorce cases involving attorneys but had never hired an expert to value an attorney's goodwill. Feldman opined that SDF did not breach its standard of care in not hiring an expert to value GWC's goodwill or plaintiff's need for indefinite or reviewable maintenance. He based his opinion on the facts that Illinois law did not require the hiring of such an expert and that several necessary factors for determining maintenance had already been established during the order of protection hearing, including plaintiff's drug use.

Finally, SDF re-called Stein to testify. During that testimony, Stein stated, over plaintiff's objections, that he had participated in previous cases that dealt with the valuation of a law firm's goodwill. He specifically referenced a trial court's ruling in a case in which he represented a partner in the law firm McDermott, Will, and Emery that disallowed the valuation of goodwill. However, the following day, the trial court informed the parties that it had reconsidered Stein's testimony regarding another trial court's treatment of goodwill valuation, and subsequently ordered the jury to disregard it.

Stein also testified about plaintiff's drug use and the order of protection entered against her. However, the trial court sustained plaintiff's objection to a question as to the

˘12˘

No. 1-04-2950

expiration of the order of protection.  Further, the court instructed the jury to disregard the contempt finding that had been entered against plaintiff.

The court also allowed defense counsel to question Stein as to SDF's theory that one reason it could not prepare for trial and sought delays was to allow plaintiff time to clean up her drug addiction.  In doing so, the trial court denied plaintiff's motion for mistrial as it determined that Stein had a right to explain his decision-making.

Finally, the trial court permitted Stein to testify as to what he and SDF would have done if they had continued to be retained as plaintiff's counsel.  That testimony supported an affidavit he had earlier filed.

At the close of testimony, the trial court agreed to give defendant's Illinois Pattern Jury Instruction, Civil, No. 12.04 (1995) hereinafter IPI Civil (1995)), which discussed the sole proximate cause of a third party's act, and IPI Civil (1995) No. 15.01, which defined proximate cause.  However, it denied plaintiff's nonpattern instruction 9A in which she sought to instruct the jury as to SDF's liability based on the viability of her case following its representation.

The parties then presented closing arguments, during which defense counsel stated:

> "We decided not to value the firm.  We
> decided not to get an expert.  They decided

˘13˘

> the same thing.  I guess Mr. Stein must have convinced them yesterday when -- remember when we talked about it would be malpractice to use that valuation?"

Plaintiff's objection to that statement was overruled.

Plaintiff also objected to defense counsel's argument that the supreme court had held that contingent fee contracts and goodwill were not subject to valuation.  The trial court again overruled her objection.

However, the trial court sustained plaintiff's objection to defense counsel's assertion that Kaufman admitted the underlying divorce case was a "slam-dunk prove-up."  The trial court also sustained plaintiff's objection to defense counsel's assertion that "[plaintiff] has been after her husband now for ten years. She's after her lawyers relating to her business with her husband.  She has gone after her husband 12 times for documents."

Following closing arguments, the jury deliberated and returned a verdict for defendant.  Subsequently, the trial court denied plaintiff's motion for a new trial, and she appealed.

## ANALYSIS

### I. Sufficiency of the Evidence

On appeal, we first address plaintiff's contention that the trial court erred in not granting her motion for a new trial where she alleges that the jury's verdict was against the manifest weight of the evidence.  A verdict is against the

manifest weight of the evidence where the opposite conclusion is clearly evident from the evidence or where the jury's findings are unreasonable or arbitrary and not based on the evidence. Maple v. Gustafson, 151 Ill. 2d 445, 454 (1992). We will not disturb the trial court's ruling on a motion for new trial absent an abuse of discretion. Maple, 151 Ill. 2d at 455. In determining whether an abuse of discretion occurred, we consider whether the evidence supported the jury's verdict and whether defendant was denied a fair trial. Maple, 151 Ill. 2d at 455. We also note that in ruling on a motion for new trial, the trial court had the benefit of observing the witnesses and the circumstances determining their credibility. Maple, 151 Ill. 2d at 456.

In this case, plaintiff alleged that SDF committed legal malpractice by failing to conduct proper discovery and to obtain expert witnesses to value the marital estate. To establish a complaint of legal malpractice, plaintiff had to prove the existence of an attorney-client relationship establishing a duty on the part of the attorney, a negligent act or omission constituting a breach of that duty, a proximate causal relationship between the breach and the damages sustained, and actual damages. Governmental Interinsurance Exchange v. Judge, 221 Ill. 2d 195, 199 (2006); Lopez v. Clifford Law Offices, P.C., 362 Ill. App. 3d 969, 974-75 (2005). " 'Even if negligence on the part of the attorney is established, no action will lie

No. 1-04-2950

against the attorney unless that negligence proximately caused damage to the client.' " Judge, 221 Ill. 2d at 199-200, quoting Northern Illinois Emergency Physicians v. Landau, Omahana, & Kopka, Ltd., 216 Ill. 2d 294, 306-07 (2005). The existence of actual damages is essential to a viable cause of action for legal malpractice. Tri-G, Inc. v. Burke, Bosselman, & Weaver, Nos. 99584, 99595 cons. slip op. at 2 (June 22, 2006), citing Northern Illinois Emergency Physicians, 216 Ill. 2d at 306-07.

> "Where the alleged legal malpractice involves litigation, no actionable claim exists unless the attorney's negligence resulted in the loss of an underlying cause of action. If the underlying action never reached trial because of the attorney's negligence, the plaintiff is required to prove that but for the attorney's negligence, the plaintiff would have been successful in that underlying action. A legal malpractice plaintiff must therefore litigate a 'case within a case.'" Tri-G, Inc., Nos. 99584, 99595 cons. slip op. at 3.

The "case within a case" on which plaintiff's malpractice claim is predicated was plaintiff's marital dissolution case involving Larry. To prove her legal malpractice claim, plaintiff had to establish that she would have received a larger share of

the marital estate as a result of the divorce proceedings but for SDF's malpractice. Judge, 221 Ill. 2d at 200.

Here, the record clearly establishes that an attorney-client relationship existed between plaintiff and SDF, and that SDF had a duty to represent plaintiff. The record, however, also shows that plaintiff failed to establish that she suffered damages due to SDF's representation. Plaintiff failed to present any concrete evidence that demonstrated that she would have received more than the $2,070,000 in assets and the $1,033,747 in non-modifiable maintenance to which she agreed had she not settled the case out of court. At trial, plaintiff testified and put forth the testimony of her successor attorney Kaufman, her expert Mirabella, whose testimony revealed that he had not reviewed much of the record, and Goldman, who valued Larry's share of the firm. SDF countered with the testimony of Larry, Cummins, and Stein. On appeal, plaintiff essentially argues that her witnesses were more credible than those of defendant.

Based on the evidence presented by plaintiff and SDF, we cannot say that the jury's verdict was against the manifest weight of the evidence. Consequently, we decline to disturb the circuit court's denial of plaintiff's motion for a new trial.

## II. Trial Court Errors

### A. *Evidentiary Rulings*

We next address plaintiff's numerous allegations that the trial court erred by admitting and excluding certain evidence.

No. 1-04-2950

The admission of evidence during a trial is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. <u>Brax v. Kennedy</u>, 363 Ill. App. 3d 343, 355 (2005). An abuse of discretion occurs where no reasonable person would agree with the disposition of the trial court. <u>Brax</u>, 363 Ill. App. 3d at 355.

### 1. Testimony Concerning Plaintiff's Drug Use

Plaintiff first contends that the trial court erred when it denied her pretrial motion *in limine* to bar evidence of her use of quaaludes. In particular, she alleges that she suffered prejudice when Larry testified that he saw plaintiff take drugs in front of their children more than 100 times.

Plaintiff argues that marital property is to be divided without regard to marital misconduct (750 ILCS 5/503(d) (West 2004)), as is maintenance (750 ILCS 5/504(a) (West 2004)), and thus argues that such evidence of her drug use was irrelevant. She further argues that even if such evidence was proper as the trial court determined for the limited issues of dissipation and to show that she was a candidate for permanent maintenance in the underlying case, SDF failed to stay within those parameters.

Plaintiff's claim of legal malpractice hinged on her ability to show that but for SDF's alleged errors she would have received more than the combined $3,103,747 for which she settled. As such, the evidence of her drug use was relevant in assessing the effect such use had on her contributions as a homemaker and to

˘18˘

the family unit (750 ILCS 5/503(d)(1) (West 2004)).  Furthermore, Larry's testimony that plaintiff used drugs in front of their children was admissible rebuttal evidence in light of plaintiff's testimony that she was a good mother.  See Barth v. Massa, 201 Ill. App. 3d 19, 33 (1990)  ("Rebuttal evidence is used to answer, explain, repel, contradict or disprove evidence introduced by the [the other party]. [Citations.] The admission of rebuttal evidence is left to the discretion of the trial court, and its decision will not be disturbed on review unless an abuse of discretion is shown").

Moreover, the record shows that the trial court sustained plaintiff's objections whenever SDF attempted to present evidence of her drug use for reasons outside the trial court's parameters.  In addition, the trial court informed the jury prior to its deliberations that it was to consider the evidence only for the consideration of each spouse's contributions to the marital assets and whether it affected plaintiff's eligibility for permanent or reviewable maintenance, and the jury is presumed to have followed that instruction (McDonnell v. McPartlin, 192 Ill. 2d 505, 535 (2000)).

Accordingly, we find no error with the trial court's admission of evidence of plaintiff's drug use.

## 2. Michael Goldman's Testimony

Plaintiff also contends that the trial court erred in limiting the testimony of her expert Goldman.  Prior to trial,

Goldman prepared a valuation report of GWC in which he found the firm's value to equal approximately $7.9 million based on the average of three different analyses.  However, the trial court ruled that Goldman could not testify as to that report since he incorporated enterprise goodwill in his valuation.  As a result, it restricted his testimony to the 1991 Coopers & Lybrand report.

On appeal, plaintiff relies heavily on language from our supreme court's holding in In re Marriage of Schneider, 214 Ill. 2d 152, 167-68 (2005):

> "The goodwill in a professional practice is generally personal in nature, while the goodwill in a corporation might include both personal and enterprise goodwill.  [In re Marriage of Talty, 166 Ill. 2d 232, 239 (1995)].  As we recognized in Talty, the duplication of the factors set forth in section 503(d) of the Act is limited to personal goodwill and does not extend to enterprise goodwill.  Talty, 166 Ill. 2d at 239-40."

In making its ruling in the instant case, the trial court reviewed case law concerning the valuation of goodwill, including the supreme court's decision in Schneider.  The trial court then noted that the governing law at the time of the underlying divorce proceedings was the supreme court's holding in In re

Marriage of Zells, 143 Ill. 2d at 256, which determined that since goodwill was reflected in maintenance and support awards, additional consideration of it as a divisible asset was "duplicative and improper." That ruling, however, addressed only personal goodwill, not enterprise goodwill.

As discussed in Schneider, the concept of enterprise goodwill was first recognized in Talty, which was filed on June 22, 1995. In this case, plaintiff discharged SDF on December 28, 1994. KLF and plaintiff settled the dissolution action on February 25, 1995. For plaintiff to prevail, she had to show that SDF's negligent act or omission proximately caused damage to her. As the concept of enterprise goodwill was not recognized until Talty in June of 1995, SDF was not negligent in failing to value Larry's enterprise goodwill in his law firm when SDF represented plaintiff in 1994. An inability to foretell the future cannot provide a basis to find an attorney liable for malpractice. Based on this same reasoning, the trial court deemed it improper to consider enterprise goodwill and, thus, barred Goldman from testifying as to much of his report which relied heavily on enterprise goodwill in valuing GWC.

Plaintiff counters in this court that the $7.9 million figure proposed by Goldman did not include goodwill value, and thus, the trial court's ruling was erroneous. For support, she cites Goldman's report, which states, "we have estimated the Fair Market Value of 100% of Goldberg, Weisman, & Cairo as of December

31, 1994 to be $7,902,000 before adjusting for different components of Goodwill."

Plaintiff misreads Goldman's report. The next line of the report reads, "As shown in the Capitalization of Excess Earnings section, approximately 94% of the value of the Firm lies in Goodwill." The report then indicates that the value of the firm is $7,159,000 when **personal** goodwill is subtracted from the overall value. Goldman's report further states that 94% of the $7.9 million valuation consisted of goodwill and 90% of that goodwill was enterprise goodwill. Since enterprise goodwill was not a recognizable element of distribution at the time of the underlying divorce (see In re Marriage of Head, 273 Ill. App. 3d 404, 409 (1995)), it was inappropriate to consider it in determining the value of GWC for purposes of this legal malpractice action.[2]

For these reasons, we find that the trial court properly limited Goldman's testimony.

---

[2]We further note that Larry is a lawyer and both Schneider and Talty recognized that "the goodwill in a professional practice is generally personal in nature" as opposed to enterprise goodwill. See Schneider, 214 Ill. 2d at 167; Talty, 166 Ill. 2d at 239. In spite of this, Goldman opined that Larry's interest in GWC constituted enterprise goodwill rather than personal goodwill.

No. 1-04-2950

### 3. Arnold Stein's Testimony

Plaintiff also alleges that the trial court erred in its rulings on Stein's testimony. Specifically, she challenges three points of his testimony.

#### a. *Testimony Regarding Unrelated Divorce Case*

Plaintiff first contends that the trial court erred where Stein testified as to a trial court's ruling on the valuation of goodwill in an unrelated divorce case he had handled. Plaintiff argues that not only was the testimony irrelevant and hearsay, but that Stein testified falsely because records show that the noted case occurred after plaintiff's case, and thus, he violated the trial court's pretrial order barring testimony to events that occurred after February 25, 1995.

We, however, find no error. The record shows that although the trial court initially overruled plaintiff's objections to that testimony, the trial court instructed the jury to disregard that portion of Stein's testimony the following day, thereby curing any defect. See Kass v. Resurrection Medical Center, 316 Ill. App. 3d 1108, 1114 (2000) ("we note that sustaining an objection and ordering an improper comment stricken generally is a prompt cure for any prejudicial impact that may have been caused"). Further, unlike the cases plaintiff relies upon in her brief, the record fails to show that Stein's testimony was an attempt to defraud the court or that it was material to the case.

Nonetheless, even if the brief injection of that testimony

was erroneous, it was harmless given plaintiff's failure to establish damages resulting from SDF's representation.

b. *Testimony of Plaintiff's Alleged Comparative Fault*

Plaintiff also contends that the trial court erred by denying her motion *in limine* to bar Stein from testifying that plaintiff did not cooperate during trial preparations. She argues that it was an inappropriate opinion as to comparative fault that was not disclosed during discovery pursuant to Supreme Court Rule 213 (Official Reports Advance Sheet No. 8 (April 17, 2002), R. 213, eff. July 1, 2002), and thus, its admission at trial resulted in prejudice, particularly when Stein mentioned a contempt order against her in the underlying action.

The record, however, shows that the trial court did not allow the evidence of plaintiff's conduct to show comparative fault. Rather, the trial court permitted it for the limited purpose of allowing SDF to explain its legal theory for filing a motion to extend the trial date. Plaintiff fails to cite any cases that assert SDF could not have presented evidence explaining its reasoning for decisions made in the handling of plaintiff's marital dissolution.

In addition, the trial court explicitly stated that evidence of plaintiff's conduct did not constitute evidence of comparative fault, and it did not provide the jury with an instruction that comparative fault could be considered. The trial court also informed the jury to disregard Stein's testimony regarding a

No. 1-04-2950

contempt order against plaintiff in the marital dissolution action. Thus, we find no error in the trial court's ruling.

### c. *Testimony as to Stein's Intentions*

Plaintiff further contends that the trial court erred by denying her motion *in limine* to bar Stein's intentions as to what SDF would have done if plaintiff had not dismissed the firm as counsel. She argues that such evidence, which SDF introduced through an affidavit signed by Stein and Stein's testimony at trial, was speculative and violated Supreme Court Rule 213 (Official Reports Advance Sheet No. 8 (April 17, 2002), R. 213, eff. July 1, 2002) because it contained previously undisclosed opinions. We disagree.

We first note that plaintiff contends that Stein's affidavit and testimony were speculative. In making that argument, she erroneously relies on <u>Soto v. Gaytan</u>, 313 Ill. App. 3d 137 (2000). In <u>Soto</u>, 313 Ill. App. 3d at 148, the appellate court held that the trial court improperly allowed the opinion testimony of a treating physician as to the permanency of the plaintiff's injuries where a substantial time had passed between the physician's last examination of plaintiff and the date of trial. In the instant case, however, Stein's affidavit and testimony did not provide an opinion. Rather, as SDF contends, the evidence provided factual considerations of plaintiff's case based on the existing law at the time of the marital dissolution. As such, we determine that the evidence was not speculative.

No. 1-04-2950

In so ruling, we also find that Stein's testimony as to
SDF's plan for handling plaintiff's case was similar to that of
an occurrence witness.  See Hernandez v. Paschen Contractors,
Inc., 335 Ill. App. 3d 936, 945-946 (2002) (trial court did not
err in allowing witness to testify as to factual observations
where witness was disclosed as a factual witness but not deposed
prior to trial and court instructed him not to provide any
opinion during his testimony).  As such, unlike Clayton v. County
of Cook, 346 Ill. App. 3d 367 (2004), upon which plaintiff also
relies, Stein did not provide opinion testimony for which SDF had
to disclose the bases therefor in its answers to plaintiff's
interrogatories.  Consequently, SDF did not violate Supreme Court
Rule 213 where the record shows that it did disclose that Stein
would testify as to SDF's representation of plaintiff in its
October 20, 2003, answer to plaintiff's interrogatories.  See
Official Reports Advance Sheet No. 8 (April 17, 2002), R.
213(f)(1), eff. July 1, 2002.

Moreover, we agree with the trial court that Stein had a
right to testify as to what SDF planned to do if plaintiff had
not discharged the firm since plaintiff repeatedly alleged in her
complaint and in court that SDF's representation rendered her
claim no longer viable.  Nonetheless, we again note that even if
any error had occurred, it was harmless where defendant failed to
establish that damages resulted from SDF's representation.

4. James Feldman's Opinion Testimony

We next address plaintiff's contention that the trial court should have excluded portions of Feldman's testimony, because they contained opinions that were not disclosed during his discovery deposition or in his answers to Supreme Court Rule 213 interrogatories. Plaintiff, however, makes little effort to develop this argument. Rather, she merely makes numerous citations to a portion of the record that spans well over 100 pages and then concludes that, pursuant to Clayton, 346 Ill. App. 3d at 367, the trial court should have sustained her objections.

We find that plaintiff's cursory argument does not meet the standard of Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)), which requires plaintiff to put forth reasons for her argument. We need not sift through the record to find support for plaintiff's contention. See Mikrut v. First Bank of Oak Park, 359 Ill. App. 3d 37, 52 (2005). Thus, we conclude that the lack of development of this issue results in its waiver. Tri-G, Inc. v. Burke, Bosselman, & Weaver, 353 Ill. App. 3d 197, 220 (2004), *aff'd in part* & *rev'd in part*, Nos. 99584, 99595 cons. (June 22, 2006) (reversing the award of punitive damages and entering a remittitur on the compensatory damage award).

Nonetheless, given the other evidence in this case, any error in the admission of such evidence would have been harmless.

### 5. Evidence of Settlement

Plaintiff's final contention as to the admission of evidence

concerns evidence of KLF settling her marital dissolution case. She argues that such evidence should have been excluded because her case was no longer viable when KLF took over for SDF.

We initially note that, in making her argument, plaintiff again attacks Feldman's testimony. We have already dismissed that argument above, and do so here.

Plaintiff relies on Mitchell v. Schain, Fursel & Burney, Ltd., 332 Ill. App. 3d 618 (2002), to support her argument that her case was no longer viable. In Mitchell, this court affirmed the trial court's summary judgment for the plaintiff's original counsel in a legal malpractice action. That ruling stemmed from this court's determination that the plaintiff's underlying cause of action was still viable when plaintiff terminated his original counsel's representation. This court noted that although the original counsel may have provided subpar representation, the statute of limitations on the plaintiff's claim had two years before expiration prior to the plaintiff hiring successor counsel. Thus, this court determined that the original counsel was not the proximate cause of damages plaintiff suffered when her underlying cause of action expired.

Plaintiff argues that unlike the plaintiff's case in Mitchell, her case was no longer viable after she dismissed SDF. We disagree.

Plaintiff dismissed SDF on December 28, 1994. KLF and plaintiff then settled the marital dissolution case on February

25, 1995. The record shows that the statute of limitations had not expired prior to KLF's representation and that nothing prohibited plaintiff from pursuing further litigation. KLF possessed detailed information of Larry's financial worth to proceed with the divorce action. Although, as plaintiff notes, Larry had disclosed financial documents for settlement purposes only, the documents informed KLF that he had substantial assets worth over $4 million. In addition, KLF deposed Larry as to his financial holdings after SDF's dismissal and KLF knew of GWC's buy-sell agreement, which set the valuation of Larry's share in GWC at $1.2 million. Viewing that evidence, combined with plaintiff's testimony, we conclude that KLF had sufficient evidence to proceed in the marital dissolution action against Larry if plaintiff had wanted to do so. As such, the underlying cause of action was still viable upon SDF's dismissal.

In reaching that conclusion, we note that a settlement by successor counsel does not necessarily bar a malpractice action against prior counsel. McCarthy v. Pedersen & Houpt, 250 Ill. App. 3d 166, 172 (1993). An attorney malpractice action should be allowed where the plaintiff can show that she settled for a lesser amount than she could reasonably expect absent the malpractice. Webb v. Damisch, 362 Ill. App. 3d 1032, 1042 (2005).

Having concluded that this case was still viable after SDF's dismissal, and considering the holdings in McCarthy and Webb, we

find that the trial court did not err by permitting evidence of KLF's settlement. This evidence countered plaintiff's contention that SDF's representation was the proximate cause of her not receiving a greater share of the marital estate. Further, the jury would have needed to consider the amount of the settlement in order to determine whether plaintiff settled for a lesser amount than she reasonably could have expected absent SDF's alleged malpractice.

### III. Trial Court's Jury Instructions

We next address plaintiff's contention that the trial court erred in ruling on jury instructions where it provided defendant's long form of IPI Civil (1995) No. 12.04 but refused to give plaintiff's nonpattern instruction on the issue of viability. The decision as to which jury instructions to use falls within the discretion of the trial court, which a reviewing court will not disturb absent an abuse of that discretion. Stift v. Lizzardo, 362 Ill. App. 3d 1019, 1025-1026 (2005). Generally, the standard for determining the adequacy of jury instructions is whether they were sufficiently clear so as not to mislead the jury, while simultaneously stating the law fairly and correctly. Baier v. Bostitch, 243 Ill. App. 3d 195, 207 (1993). A new trial will only be granted where the instructions were faulty and misled the jury so as to result in prejudice to appellant. Bostitch, 243 Ill. App. 3d at 207.

#### A. *Issue of Foreseeability*

No. 1-04-2950

Plaintiff first contends that the trial court erred by giving defendant's long form instruction on sole proximate cause, IPI Civil (1995) No. 12.04. That instruction stated:

> "More than one person may be to blame for causing an injury. If you decide that the defendant was negligent and that their negligence was a proximate cause of injury to the plaintiff, it is not a defense that some third person who is not a party to the suit may also have been to blame.
>
> However, if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some person other than the defendant, then your verdict should be for the defendant." IPI Civil (1995) No. 12.04.

On appeal, plaintiff relies on Dugan v. Sears, Roebuck & Co., 113 Ill. App. 3d 740 (1983), to argue that the instruction as given was erroneous because it did not include the concept of foreseeability. In Dugan, this court held that a jury verdict for the defendant on a strict liability claim was not against the manifest weight of the evidence where it found that the intervention of a third party was the sole proximate cause of the injury. In so ruling, this court determined that the jury could have reasonably determined that the third party's behavior was not so foreseeable that the defendant could have taken action to prevent the superceding cause. Dugan, 113 Ill. App. 3d at 744.

We find, however, that Dugan provides little support for

˘31˘

plaintiff's argument in this case. Although <u>Dugan</u> examined the concept of foreseeability in determining whether a third party's superceding actions constituted proximate cause, it did not do so within the context of jury instructions. As such, we reject plaintiff's invitation to extend the holding in <u>Dugan</u> so as to require reversal in this case where the trial court provided the jury with IPI Civil (1995) No. 12.04 without incorporating the concept of foreseeability.

Moreover, IPI Civil (1995) No. 15.01, which the trial court also gave the jury, provided:

> "When I use the expression 'proximate cause,'
> I mean any cause which, in natural or
> probable sequence, produced the injury
> complained of. It need not be the only
> cause, nor the last or nearest cause. It is
> sufficient if it concurs with some other
> cause acting at the same time, which in
> combination with it, causes the injury." IPI
> Civil (1995) No. 15.01.

Where that instruction spoke of a cause that is "in natural or probable sequence," it incorporated the concept of foreseeability. Pursuant to IPI Civil (1995) No. 15.01, the jury could have found that SDF's actions or inactions were a proximate cause of any damages plaintiff sustained. The fact that the jury found for SDF does not mean that the instructions were erroneous.

No. 1-04-2950

As such, we find that the trial court provided the jury with instructions that fairly and accurately stated the law and, thus, find no reversible error.

### B. *Instruction on Issue of Viability*

Plaintiff's second jury instruction contention is that the trial court erred in refusing to give her nonpattern instruction on the issue of viabilty. In her brief, she contends that the instruction was "designed to instruct the jury along the lines of the case of [Mitchell] where the issue was whether the settlement reached by the second law firm broke the chain causation as to the alleged negligence of the first law firm." In her reply brief, plaintiff further asserts that this court's recent ruling in Lopez v. Clifford Law Offices, P.C., 362 Ill. App. 3d 969 (2005), which affirmed the use of the viability standard, increases the significance of her argument.

We first note that we agree with plaintiff that the viability standard that this court applied in Mitchell and Clifford remains applicable in assessing an original attorney's liability in a legal malpractice case. However, those rulings provide no support for plaintiff's argument that the trial court erred in not giving the jury a nonpattern instruction on viability.

A trial court is required to use pattern instructions when applicable in a civil case after considering the facts and prevailing law. Schultz v. Northeast Illinois Regional Commuter

˘33˘

No. 1-04-2950

R.R. Corp., 201 Ill. 2d 260, 273 (2002).  However, if a pattern instruction does not accurately state the law, the court may instruct the jury pursuant to a non-IPI instruction.  Schultz, 201 Ill. 2d at 273.

Here, plaintiff's nonpattern instruction provided:

"There are circumstances in which the first attorney, Defendant Schiller, Ducanto and Fleck, could be held to be a proximate cause of plaintiff's damages even though a successor counsel took over the case after the first attorney's discharge.  Those circumstances in where [*sic*] the defendant's acts or omissions leave doubt about the subsequent viability of plaintiff's claim after the representation of the first attorney, defendant Schiller, Ducanto and Fleck, Limited, ended.  It is for the jury to determine whether the defendant[']s acts or omissions left doubt about the subsequent viability of plaintiff's claims in the Weisman 1994 Lake County divorce case at the time of defendant's discharge."

We find that this instruction in large part repeated the pattern instructions as to proximate cause, which were given, but with the intermixing of facts from this case.  Thus, the nonpattern

No. 1-04-2950

instruction was unnecessary.

Further, the "left doubt" standard utilized in plaintiff's proffered instruction was erroneous. In <u>Mitchell</u>, 332 Ill. App. 3d at 621, this court explained:

> "We recognize that there may be circumstances where the first attorney could be held to be a proximate cause of plaintiff's damages where his acts or omissions leave doubt about the subsequent viability of plaintiff's claim after his representation ends, such as when a statute of limitations expires one day after an attorney ceases representation and a new attorney could not reasonably recognize that problem in the time allowed."

This court then affirmed the circuit court's entry of summary judgment for the defendant law firm utilizing the "leave doubt" standard. See <u>Purtill v. Hess</u>, 111 Ill. 2d 229, 240 (1986) (summary judgment should be allowed "when the right of the moving party is clear and free from doubt"). The instant case, however, did not involve a summary judgment, and thus, the "leave doubt" standard did not apply. As such, we find that the proffered nonpattern instruction was erroneous.

For these reasons, we find no error in the trial court's ruling.

                    IV. Defense Counsel's Closing Argument

˘35˘

Finally, plaintiff argues that defense counsel's closing argument denied her a fair trial. Specifically, plaintiff references her objections to four of defense counsel's comments during closing argument as grounds for a new trial.

In making closing arguments, attorneys are generally given broad latitude. Lewis v. Cotton Belt Route-St. Louis Southwestern Ry. Co., 217 Ill. App. 3d 94, 111 (1991). The trial court has discretion in the scope of a closing argument and its judgment as to the propriety of comments therein will not be reversed unless they were of such character that they prevented the opposing party from receiving a fair trial. Lewis, 217 Ill. App. 3d at 111. A reviewing court gives great deference to the trial court due to its superior position to assess the accuracy and effect of counsel's statements. Lauman v. Vandalia Bus Lines, Inc., 288 Ill. App. 3d 1063, 1071 (1997).

Plaintiff first argues that defense counsel's statement as to plaintiff's decision to present an expert witness on the valuation of Larry's firm was erroneous because it allegedly constituted improper commentary on Stein's credibility where defense counsel alleged that plaintiff's decision was because "Mr. Stein must have convinced them yesterday." Plaintiff further argues that the statement constituted an opinion not disclosed pursuant to Supreme Court Rule 213, and that it misstated the evidence. As defendant argues, however, defense counsel's statement was not made to bolster Stein's credibility

but, rather, served as conjecture as to plaintiff's trial decisions. Further, no violation of Rule 213 occurred as the comment clearly was not an improper assertion of undisclosed opinion testimony. Finally, although the record shows that plaintiff had Goldman testify as an expert at trial, her counsel did not even comment on his testimony in her closing argument. Thus, we find that no prejudice resulted from defense counsel's comment regarding plaintiff's use of an expert.

Plaintiff also argues that defense counsel misstated the law when he stated that, pursuant to the supreme court's ruling in In re Marriage of Zells, contingent fees and goodwill are not marital assets subject to distribution and division. However, the holding in In re Marriage of Zells, which was the law at the time of the underlying case, was just as defense counsel stated, and thus, we find no error.

Plaintiff further argues that defense counsel misstated the testimony of Kaufman by claiming that he acknowledged that the underlying case was a "slam-dunk prove-up." We find, however, that any error resulting from that remark was cured when the trial court sustained plaintiff's objection and counsel admitted his error in open court. Kass, 316 Ill. App. 3d at 1114.

Plaintiff's final argument regarding closing argument was that defense counsel "made up facts that were not in evidence" where he argued, "[Plaintiff] has been after her husband now for ten years. She's after her lawyers relating to her business with

her husband. She has gone after her husband 12 times for documents." The record, however, shows defense counsel's statement did not "make up facts" where nearly 10 years had passed since the original settlement, plaintiff had sued her former counsel, and through SDF and KLF, plaintiff had requested documents from Larry multiple times during the years of litigation. Morever, the trial court sustained plaintiff's objection, thereby curing any defect.

For these reasons, we find that defense counsel's closing argument did not deprive plaintiff of a fair trial.

CONCLUSION

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

GREIMAN and MURPHY, JJ., concur.