# Illinois Official Reports
## Appellate Court

***Hayward v. C.H. Robinson Co.*, 2014 IL App (3d) 130530**

| | |
|---|---|
| Appellate Court Caption | RICHARD HAYWARD, as Administrator of the Estate of Crystal Hayward and Individually, Plaintiffs-Appellants, v. C.H. ROBINSON COMPANY, INC.; C.H. ROBINSON TRANSPORTATION COMPANY, INC.; C.H. ROBINSON INTERNATIONAL, INC.; C.H. ROBINSON COMPANY; C.H. ROBINSON WORLDWIDE, INC.; C.H. ROBINSON WORLDWIDE-LTL, INC.; COMPASS LEASING, INC.; COMPASS FINANCIAL MANAGEMENT GROUP, INC., d/b/a Compass Leasing; COMPASS LEASE, LLC; VLADO PETROVSKI; and PELLA CARRIER SERVICES, INC., Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-13-0530 |
| Rule 23 Order filed | October 29, 2014 |
| Motion to publish allowed | December 9, 2014 |
| Opinion filed | December 9, 2014 |
| Rehearing denied | December 9, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action plaintiff filed for the death of his wife when the vehicle she was driving struck a tractor trailer while it was making an illegal U-turn in the middle of a highway, the trial court's entry of summary judgment for the transportation broker that entered into a contract for carrier services provided by the company that supplied the tractor trailer and its driver was affirmed by the appellate court, since the transportation broker was an independent contractor and the contract for carrier services required the carrier to have minimum insurance for liabilities arising from hauling loads for the broker and to hold the broker harmless from any and all losses arising from the services provided; additionally, once summary judgment was entered for the transportation broker, the appellate court found that the trial court did not abuse its discretion in denying plaintiff's motion to compel further discovery pursuant to Supreme Court Rule 191. |

| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 09-L-68; the Hon. David J. Dubicki, Judge, presiding. |
| --- | --- |
| | |
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | David A. Kleczek, of Oakland, California, Greg Leiter, of Law Office of Gregory L. Leiter, of Joliet, and Alene Kleczek Bolin, of Baraboo, Wisconsin, for appellants. |
| | |
| | William J. Ryan and Eric J. Munoz, both of Scandaglia & Ryan, of Chicago, for appellees. |
| | |
| Panel | JUSTICE WRIGHT delivered the judgment of the court, with opinion. Justices Holdridge and McDade concurred in the judgment and opinion. |

**OPINION**

¶ 1     Crystal Hayward died from severe injuries she sustained when her vehicle collided with a tractor-trailer driven by an employee of Pella Carrier Services, Inc. (Pella). At the time of the collision, Pella was transporting the contents of the tractor-trailer as an independent contractor for C.H. Robinson Worldwide, Inc. Crystal's husband filed a third amended complaint alleging multiple counts of negligence and/or willful and wanton conduct against Vlado Petrovski, Pella, each of the C.H. Robinson companies (collectively Robinson), and various other defendants.

¶ 2     The trial court found that Pella was operating as an independent contractor and not as an agent of Robinson and that Robinson had no control over Pella's operation. The court also found that Robinson did not negligently hire or supervise Pella or Petrovski. On this basis, the trial court granted summary judgment in favor of Robinson. After granting summary judgment in favor of Robinson, the court denied plaintiffs' motion to compel Robinson to produce additional discovery. We affirm.

¶ 3     BACKGROUND

¶ 4     On February 4, 2009, defendant Vlado Petrovski, while employed by Pella, attempted to make an illegal U-turn with his tractor-trailer in the middle of Route 29, in Chillicothe, Illinois, when a vehicle driven by Crystal Hayward struck the side of the tractor-trailer. On

- 2 -

December 10, 2010, Crystal died as a result of the severe injuries she sustained from the collision.

¶ 5 Plaintiff Richard Hayward filed a 56-count, third amended complaint, individually, and as special administrator for Crystal's estate (collectively plaintiffs) naming Petrovski, Pella, Robinson, and the Compass companies[1] as defendants. The counts of the third amended complaint relevant to this appeal alleged separate causes of action against each of the Robinson defendants separately, claiming each was liable for Petrovski's and/or Pella's acts or omissions under different legal theories of liability for negligence. The only legal theory relevant to this appeal addressed Robinson's negligent hiring, retention, and supervision of Pella and/or Petrovski.

¶ 6 On October 3, 2011, Robinson filed a motion for summary judgment alleging the undisputed facts contained in the pleadings and attachments were insufficient to support any of the plaintiffs' theories of recovery based on negligence or willful and wanton misconduct attributable to Robinson. In its motion for summary judgment, Robinson attached a detailed affidavit as well as the discovery deposition of Bruce Johnson, Robinson's manager of carrier services, explaining Robinson's policies and procedures used when contracting with independent contractor carriers. Therefore, Robinson asked the trial court to enter summary judgment in favor of Robinson and against plaintiffs. Plaintiffs filed a motion in opposition to Robinson's motion for summary judgment with multiple attachments, including an affidavit and deposition of Peter A. Philbrick, a commercial vehicle safety specialist.[2]

¶ 7 Before the hearing took place on Robinson's motion for summary judgment, plaintiffs filed "Plaintiffs' Motion to Compel" against Robinson on July 12, 2012. The motion to compel requested the court to order Robinson to disclose any records in its possession regarding Robinson's knowledge of Transpeed, Inc.'s (Transpeed's) connection to Pella and Robinson's knowledge of Transpeed's previous poor safety record.

¶ 8 Plaintiffs informed the court they did not require this additional discovery, pursuant to Rule 191(b) (Ill. S. Ct. R. 191(b) (eff. July 1, 2002)), prior to the summary judgment hearing because they felt they had sufficient facts, at that time, to support denial of the motion for summary judgment. Consequently, the court set the pending motions for a combined hearing on August 31, 2012, to address both the motion for summary judgment and the motion to compel.

¶ 9 I. Summary Judgment Pleadings

¶ 10 The pleadings established the following uncontested facts with respect to Petrovski's safety record and employment status. Petrovski had a valid commercial driver's license (CDL) for seven years preceding the date of the collision. His driving record did not include any traffic tickets or moving violations. Additionally, Petrovski's tractor-trailer was in good condition with no safety violations when the accident occurred.

¶ 11 During those seven years when he established a safe driving record, Petrovski was employed by Pella as a driver of tractor-trailers hauling freight from May 2005 through May

---

[1]We refer to all of the above-named Compass defendants as Compass.

[2]The attachments included the contract between Robinson and Pella, affidavits, deposition transcripts, and other documentation submitted by both parties.

2006. Thereafter, Petrovski worked as a truck driver for a company called Transpeed from 2006 through 2008. Finally, Petrovski returned to his employment as a driver for Pella, beginning in 2008, and was an employee of Pella at the time of the collision. From 2005 through 2008, both Transpeed and Pella were owned and operated as separate business entities by the same person, Eric Popov. The pleadings also established that Transpeed lost its federal licensing in 2008 due to safety issues.

¶ 12    Robinson entered into an "Agreement for Motor Contract Carrier Services" (the contract) with Pella, on May 9, 2005, and the contract remained in effect on February 4, 2009, at the time of the collision. The contract between Pella and Robinson detailed Robinson's role, as a transportation broker, was to arrange for the transportation of freight cargo belonging to Robinson's customers from one location to another, and Pella's role was to provide "contract carriage," as an independent contractor, and transport the freight cargo from point A to point B as brokered by Robinson. At the time of the collision, Pella was transporting freight cargo for Robinson under the terms of the contract.

¶ 13    Pella received compensation directly from Robinson for transporting the freight cargo. The contract required Pella, at its own cost, to procure and maintain all required "licenses, fees, taxes, fuel tax payments, road tax, equipment use fees or taxes, equipment license fees, driver's license fees, tolls and any other fees and fines that may be assessed on its equipment or its operations." Robinson did not own, operate, or lease any of its own vehicles and equipment or hire any of the operators of the tractor-trailers. The contract further required Pella to provide and maintain all vehicles used to transport the freight cargo and to comply with all applicable motor vehicle safety regulations. Under the contract, Pella had to maintain a "U.S. DOT safety rating that is 'satisfactory,' 'conditional,' *** or 'unrated.' " That clause further provided: "[Pella] warrants that it will promptly notify Robinson if [Pella] is assessed an 'unsatisfactory' safety rating, or if any equipment is known to be or reported as defective or which is not in compliance with the applicable Federal, State, Provincial or Territorial statute or regulation pertaining to vehicle or highway safety and Robinson will suspend all service with [Pella] and this Contract shall be terminated." Pella also had to "ensure that its drivers are properly trained and licensed, and are competent and capable of safely handling and transporting Robinson's shipments."

¶ 14    Clause 11 of the contract specifically provided:

"[Pella] is an independent contractor and shall exercise exclusive control, supervision, and direction over (i) the manner in which transportation services are provided; (ii) the persons engaged in providing transportation services; and (iii) the equipment selected and used to provide transportation services. [Pella] shall have full responsibility for the payment of local, state, and federal payroll taxes, workers compensation and other social security and related payment requirements with respect to all persons engaged in the performance of transportation services. This Contract does not create, nor shall it be deemed to create a partnership, joint venture, or agency relationship between Robinson and [Pella]."

¶ 15    Finally, the contract required Pella to maintain the minimum amounts of insurance for any liabilities resulting from Pella hauling loads for Robinson. It included an indemnification clause providing that Pella shall "indemnify, defend, and hold Robinson, its customers, cosignors, and cosignees *** harmless from and against any and all losses, harm, injuries, damages, claims, costs, expenses, and liabilities arising from, or in connection with services

- 4 -

provided by [Pella], its employees, agents, and contractors, unless resulting directly from the negligence or willful act or omission of Robinson or its customers and their consignors and cosignees."

¶ 16 Robinson attached to its summary judgment motion an affidavit and deposition transcript of Bruce Johnson, Robinson's manager for carrier services, who explained the contractual relationship that existed between Robinson and Pella designated Pella to be an independent contractor. Johnson explained Petrovski had never been an employee of Robinson, Robinson did not have any rights to select the driver assigned by Pella to carry its contract loads, and Robinson had no control over or any joint venture with Pella or Petrovski.

¶ 17 Johnson explained that Robinson obtained proof of Pella's federal operating authority and liability insurance prior to contracting with Pella in 2005. Before signing the contract, Robinson also checked Pella's safety record using the United States Department of Transportation (DOT) website and confirmed that Pella had an acceptable safety rating. Robinson annually rechecked the safety rating of all of its independent contractors and determined Pella continued to have satisfactory safety ratings.

¶ 18 Johnson's affidavit also addressed Pella's past carrier load history with Robinson, from 2005 until the February 2009 accident, showing that Pella transported approximately 770 loads for Robinson as an independent contractor and, up until the accident between Crystal Hayward and Petrovski, Pella transported all but the subject load safely and without an accident. The undisputed facts set out in the trial court record established Petrovski had never been an employee of Robinson.

¶ 19 Plaintiffs' response in opposition to the motion for summary judgment included an attached affidavit and deposition of their expert, Peter A. Philbrick, a commercial vehicle safety specialist for Ruhl Forensic, Inc. Philbrick opined Pella and Robinson's ongoing contractual relationship created a joint venture between the two companies to transport freight since Robinson retained some degree of control over Pella and/or its drivers. Philbrick's affidavit said he relied on "information from the [DOT]," pursuant to a Freedom of Information Act (FOIA) (5 U.S.C. § 552 (2006)) request, that documented reasons why Transpeed lost its motor carrier operating authority in 2008 based on unsatisfactory safety ratings.[3] Philbrick's affidavit further opined Pella had some connection to Transpeed because both companies shared some employees, including Popov, a bookkeeper, and a dispatcher. Finally, Philbrick's affidavit opined Robinson had adequate notice that *Pella*, by virtue of this connection with Transpeed, also had a "poor safety record." Based on this knowledge, Philbrick concluded Robinson neglected its duty to investigate Pella, beyond reviewing the information available to the public, and should have terminated its contract with Pella before the February 4, 2009, collision since Robinson had notice that Transpeed lost its federal license in 2008, specifically due to Transpeed's "unsatisfactory safety performance."

¶ 20 Additionally, Philbrick explained, during his deposition, the industry standard of care or duty for freight brokers. According to Philbrick, after asking the motor carrier for its insurance policy and DOT operating authority, the broker should check the Federal Motor Carrier Safety Administration (FMCSA) website to view the carrier's record and safety rating and annually recheck the carrier's public record to make sure nothing has changed. In his deposition

---

[3]A copy of this "information" or documentation relied upon by Philbrick was not included as an attachment to his affidavit nor was it submitted as part of the trial or appellate record.

transcript, Philbrick agreed that the "publicly-available information" concerning Pella demonstrated Pella had a satisfactory safety rating in 2008 and 2009 although, through further investigation beyond public information, Philbrick claimed Robinson would have discovered some safety problems in Pella's history.

¶ 21                                   II. Court's Ruling

¶ 22    In a written order entered on December 13, 2012, the trial court granted Robinson's motion for summary judgment in its entirety and entered judgment in favor of Robinson and against plaintiffs as to all counts directed against Robinson. In its ruling, the court found:

> "The contractual documents clearly show that Pella was an independent contractor and not an agent of Robinson. ***
>
>                                    * * *
>
> *** In the present case the only 'control' exercised over Pella and/or Petrovski was the contractual requirement that the goods be picked up and delivered on time.
>
>                                    * * *
>
> In the present case Robinson acted as a broker, and not as a carrier. Robinson was interested only in the result (the timely delivery of the goods) and did not control either Pella or Petrovski with regard to the methods, means, and manner of doing such work."

The court further found Robinson did not control the manner of performing work, Robinson did not have the right to discharge Petrovski, Robinson did not pay Petrovski, Petrovski provided the necessary tools and equipment, Robinson did not deduct taxes from Petrovski's wages, and the level of skill required was not significant.

¶ 23    In this same written order, the trial court denied plaintiffs' motion to compel and plaintiffs' request for the court to enter a "bad faith finding as to the Johnson affidavit." Finally, the court found there was no basis in the facts for vicariously imposing punitive damages against Robinson for the conduct of Petrovski.

¶ 24    Plaintiffs, on January 16, 2013, filed a motion to reconsider the court's decision granting summary judgment in favor of Robinson alleging the court misapplied the law when rendering its decision. The trial court denied reconsideration on March 8, 2013. On July 3, 2013, the trial court entered a final order dismissing the remainder of all pending crossclaims and noted this order was the final judgment of the court, leaving no further claims or controversies between or against any party to this litigation. Plaintiffs filed a notice of appeal, on July 17, 2013, contesting the order granting Robinson's motion for summary judgment and denying plaintiffs' motion to compel.

¶ 25                                     ANALYSIS

¶ 26    On appeal, plaintiffs submit that a question of material fact exists regarding whether Robinson negligently hired or negligently supervised Pella prior to the February 4, 2009, collision. Additionally, plaintiffs challenge the trial court's denial of plaintiffs' motion to compel Robinson to produce discovery related to Robinson's knowledge of the poor safety record of Transpeed, a company that was also operated by the owner of Pella.

¶ 27    Robinson responds that, at the time of the accident, it is undisputed that Pella had a valid federal license and an ongoing history of maintaining a satisfactory safety record. Therefore,

Robinson did not negligently hire or retain Pella as an independent contractor and had no duty to further investigate Pella's safety ratings or supervise Pella's operations with heightened scrutiny after Transpeed lost its federal license. Further, once the trial court granted summary judgment in favor of Robinson, Robinson asserts the court did not abuse its discretion by denying plaintiffs' motion to compel discovery relating to a nonparty motor carrier.

¶ 28                                    I. Standard of Review

¶ 29        This court reviews a trial court's grant of summary judgment *de novo*. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004); *Strickland v. Communications & Cable of Chicago, Inc.*, 304 Ill. App. 3d 679, 682 (1999) (citing *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992)). Although neither party addressed the standard of review regarding the motion to reconsider, we note that plaintiffs' motion challenged only the trial court's application of the law. When a motion to reconsider only asks the trial court to re-evaluate its application of the law of the case as it existed at the time of judgment, our standard of review is also *de novo. Belluomini v. Zaryczny*, 2014 IL App (1st) 122664, ¶ 20.

¶ 30                     II. Burden for a Ruling Based on Summary Judgment

¶ 31        Summary judgment is only appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012); see also *Adams*, 211 Ill. 2d at 43; *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). To survive a motion for summary judgment, plaintiffs must "come forward with evidence establishing a genuine issue of fact." *Lavazzi v. McDonald's Corp.*, 239 Ill. App. 3d 403, 408 (1992). A "triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Adams*, 211 Ill. 2d at 43. The use of the summary judgment procedure is encouraged as an aid to expedite the disposition of a lawsuit; however, it is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. *Id.*

¶ 32        It is well established that all evidence, when deciding a motion for summary judgment, should be viewed in a light most favorable to the nonmoving party. *Adams*, 211 Ill. 2d at 43. However, summary judgment in favor of a defendant is proper if a plaintiff has not presented sufficient facts to establish all essential elements of the cause of action. *Lavazzi*, 239 Ill. App. 3d at 408.

¶ 33           III. Negligent Hiring, Retention or Supervision of an Independent Contractor

¶ 34        On appeal, plaintiffs do not challenge the trial court's finding that Pella was an independent contractor with respect to the service Pella provided to Robinson by contract. It is undisputed that the contract demonstrated Robinson, a freight broker, retained Pella, a freight carrier, as an independent contractor in 2005 rather than hiring Pella to act as an agent of Robinson. This contractual arrangement remained in effect in February 2009 when the collision occurred between Petrovski and Crystal.

¶ 35        It is well established that " '[o]ne who employs an independent contractor is not liable for the latter's acts or omissions [citations] except where the principal orders or directs the acts

causing the harm, negligently selects an incompetent contractor [citation], or retains control over the "operative details of the contractor's work." ' " *DiMaggio v. Crossings Homeowners Ass'n*, 219 Ill. App. 3d 1084, 1089-90 (1991) (quoting *Dvorak v. Primus Corp.*, 168 Ill. App. 3d 625, 633 (1988)). To succeed in a cause of action regarding the negligent hiring of an independent contractor, plaintiffs must show that Robinson negligently hired Pella, designated by the contract to be an independent contractor, when Robinson knew or should have known Pella was unfit for the required contracted job so as to create a danger of harm to other third parties. *DiMaggio*, 219 Ill. App. 3d at 1090; *Huber v. Seaton*, 186 Ill. App. 3d 503, 508 (1989). Thus, we examine the pleadings and their attached documentation to determine whether the undisputed facts demonstrate that Robinson knew or should have known *Pella* had a "particular unfitness" that created a danger of harm to third persons prior to or on February 4, 2009, while Pella was performing work as an independent contractor for Robinson. *Huber*, 186 Ill. App. 3d at 508. If so, we must also assess whether there was a connection between that particular unfitness and the negligent act of the independent contractor. *Id.*

¶ 36                    IV. The Parties' Pleadings Regarding Summary Judgment

¶ 37        Both parties refer to their respective attachments in their pleadings in support of, or in opposition to, the motion for summary judgment. The documentation attached to the pleadings includes, in part, the affidavits and discovery depositions of Bruce Johnson, the carrier manager for Robinson, and Philbrick, plaintiffs' expert, and provides the following facts. Beginning in 2005 until the date of the collision, Pella safely hauled 770 loads for Robinson without incident or accident. Further, it is undisputed that from 2005, when Robinson contracted with Pella in 2005, through 2009, Pella maintained its federal licensing with DOT and a "satisfactory" safety rating with FMCSA. Additionally, at the time of the collision in February 2009, Pella's driver, Petrovski, had a CDL for the seven years preceding the date of the crash without any traffic tickets or moving violations. It is undisputed that Petrovski's vehicle was in good condition with no equipment safety violations when the accident occurred.

¶ 38        Plaintiffs contend Philbrick's conclusions, set out in his affidavit, conflict with the facts set forth above. Philbrick's affidavit alleges he received "information" from DOT indicating Transpeed lost its license in 2008 due to safety issues and, since Transpeed and Pella shared common ownership interests through Popov, Robinson should have known Pella required heightened scrutiny with respect to safety issues. However, Philbrick did not append the actual DOT information he reviewed and received pursuant to his FOIA request.

¶ 39        Rule 191(a) mandates that affidavits, in support of or in opposition to a motion for summary judgment, "shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191(a) (eff. July 1, 2002). An expert's affidavit, such as Philbrick's affidavit, must be in strict compliance with Rule 191(a) because the affidavit is submitted in the summary judgment context as a substitute for testimony at trial and helps "to insure that trial judges are presented with valid evidentiary facts upon which to base a decision." (Internal quotation marks omitted.) *Robidoux*, 201 Ill. 2d at 335-36. In order to survive a motion for summary judgment, the nonmoving party must present a factual basis that would arguably entitle that party to a judgment. *Id.* at 335.

¶ 40 Consequently, based on Supreme Court Rule 191(a), we are unable to consider Philbrick's assertion that Transpeed lost its federal licensing due to those specific safety issues, rather than on some other basis, or that Pella's drivers may have had some traffic violations in 2008. These assertions in Philbrick's affidavit cannot be considered by this court as an established fact for purposes of summary judgment since we are unable to review the DOT information Philbrick relied upon before drawing his conclusions.

¶ 41 Regarding the allegations of Robinson's negligent hiring or supervision of Pella, in his attached deposition transcripts, plaintiffs' expert Philbrick explained the industry standard of care applicable when a freight broker contracts with a carrier to haul cargo as it pertains to a negligent hiring cause of action. The undisputed facts in evidence, through the affidavit and deposition of Robinson's employee, Johnson, show that Robinson complied with that standard of care when initially contracting with Pella and annually rechecking Pella's safety records to verify that Pella maintained its federal licensing and satisfactory safety rating since 2005. In fact, Philbrick agrees the safety information available to the public supports the view that Pella consistently maintained a satisfactory safety record.

¶ 42 Although Popov owned both Transpeed and Pella, the record shows that Transpeed was a totally separate entity from Pella, regardless of ownership. Even if Petrovski worked for both Transpeed and Pella at different times over the years, it is undisputed Petrovski had a continuous safe driving history during his employment with both entities up until the date of the collision in 2009.

¶ 43 Based on our *de novo* review of the record, and looking at the undisputed facts contained in the pleadings and attached documentation in a light most favorable to the nonmovant, we conclude Robinson was not negligent in hiring Pella to haul freight as an independent contractor and did not have any reason to believe either Pella or its employees, such as Petrovski, engaged in unsafe practices at any time when transporting freight as required by the contract between Pella and Robinson. Therefore, we conclude summary judgment was properly entered in favor of each Robinson defendant.

¶ 44                                    V. Motion to Compel

¶ 45 Finally, plaintiffs argue the trial court abused its discretion when denying their motion to compel the discovery of additional evidence from Robinson regarding internal documentation showing its knowledge that Transpeed was "a shell corporation for [Pella]" and that Transpeed lost its federal motor carrier operating authority for safety violations in 2008. The circuit court's discretionary powers regarding pretrial discovery are extremely broad. *Wynne v. Loyola University of Chicago*, 318 Ill. App. 3d 443, 455 (2000). The pretrial discovery rulings of the circuit court will not be interfered with on appeal absent a manifest abuse of discretion. *Id.* A court abuses its discretion when its discovery ruling " 'is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *Taylor v. County of Cook*, 2011 IL App (1st) 093085, ¶ 23 (quoting *People v. Caffey*, 205 Ill. 2d 52, 89 (2001)). "An abuse of discretion standard is highly deferential to the circuit court." *Taylor*, 2011 IL App (1st) 093085, ¶ 23.

¶ 46 Here, Robinson argues that plaintiffs opted not to request this additional discovery, under Rule 191(b), prior to the court deciding the summary judgment motion. Ill. S. Ct. R. 191(b) (eff. July 1, 2002). When a Rule 191(b) affidavit requests further discovery, the court may continue the summary judgment hearing to allow the party to obtain the discovery, including

documents from affiants. *Id.* It is well established when a plaintiff does not submit a Rule 191(b) affidavit, he cannot complain on appeal of an inability to conduct discovery before summary judgment was ordered. *Rogers v. Robson, Masters, Ryan, Brumund & Belom*, 74 Ill. App. 3d 467, 471 (1979). In their reply brief, plaintiffs contend their discovery requests and motion to compel were timely filed within the court-ordered discovery period, although not addressed until the hearing regarding summary judgment. Therefore, plaintiffs argue they were still entitled to have the court compel Robinson to produce this discovery. Plaintiffs argue that they need the requested discovery from Robinson in order to prove their negligent hiring claim against Robinson.

¶ 47    Robinson responds that plaintiffs elected to go forward on the hearing for summary judgment before the court ruled on the motion to compel. Once the court allowed summary judgment in favor of Robinson, Robinson was no longer a party for purposes of ongoing discovery. We conclude that, since we have affirmed the court's ruling on summary judgment, we need not address the merits of the motion to compel. Here, plaintiffs advised the court they were willing to proceed with the motion for summary judgment without the additional discovery. Therefore, we observe the time to establish plaintiffs' case of negligent hiring against Robinson was at that summary judgment motion hearing. See *Holland v. Arthur Andersen & Co.*, 212 Ill. App. 3d 645, 653 (1991).

¶ 48    Since plaintiffs agreed the court should consider both motions at the same time, without requesting a continuance and further discovery pursuant to Rule 191(b) (Ill. S. Ct. R. 191(b) (eff. July 1, 2002)), once the trial court granted the motion for summary judgment in favor of Robinson, the court did not abuse its discretion in denying plaintiffs motion to compel further discovery at that stage of the proceedings.

¶ 49                                CONCLUSION

¶ 50    For the foregoing reasons, we affirm the rulings of the circuit court of Peoria County granting summary judgment for Robinson and denying plaintiffs' motion to compel discovery.

¶ 51    Affirmed.