2022 IL App (1st) 201115-U

No. 1-20-1115

Order filed March 24, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| TONI A. ROSA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 L 63020 |
| | ) | |
| ANNA M. BUSH and BUSH AND HEISE, | ) | Honorable |
| | ) | Martin S. Agran, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) The trial court's order granting defendants' motion for summary judgment is affirmed; and (2) the trial court's order granting defendants' motion to strike plaintiff's affidavit is affirmed.

¶ 2    Plaintiff Toni A. Rosa appeals from the circuit court's order granting summary judgment

for plaintiff's former attorneys Anna M. Bush (Bush) and the law firm of Bush and Heise.

Plaintiff's first amended complaint alleged legal malpractice against defendants based on Bush's representation of plaintiff in an underlying divorce action.

¶ 3    On November 27, 2019, the trial court granted summary judgment for defendants and also granted defendants' motion to strike plaintiff's affidavit. On December 23, 2019, plaintiff filed a motion to reconsider both rulings. On September 16, 2020, the trial court denied plaintiff's motion to reconsider. On October 15, 2020, plaintiff filed a timely notice of appeal. We have jurisdiction pursuant to Illinois Supreme Court Rule 303 (eff. July 1, 2017).[1]

¶ 4    For the reasons that follow, we affirm the trial court's judgment.

¶ 5                                      I. BACKGROUND

¶ 6                            A. The Underlying Divorce Action

¶ 7    On November 22, 1997, plaintiff and Timothy R. Wujcik were married. Between 2000 and 2004, the couple had three children, two boys, and one girl. After an unsuccessful attempt at mediation, the parties hired attorneys to represent them. Plaintiff hired and later fired attorney Margaret Zuleger while Wujcik hired attorney Patti S. Levinson. On September 30, 2014, plaintiff hired Bush to represent her in the divorce proceeding brought by Wujcik.

¶ 8    On April 17, 2015, judgment was entered on the marital settlement agreement reached by plaintiff and Wujcik. Wujcik's attorney drafted the agreement. As is pertinent to the claims raised on appeal, the agreement contained the following provisions:

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

"1.05 Without collusion in the pending proceedings, and without any intent to stimulate a dissolution of marriage, [Wujcik] and [plaintiff] believe that it is in their best interest to settle between themselves all rights and claims against each other, including, but not limited to, past, present, and future maintenance and spousal support, and attorneys' fees and costs, and to forever, finally and fully settle between themselves all other rights and obligations growing out of any relationship now or previously existing between them and to fully and finally settle any and all rights of every kind, nature, description, which either of them now has or may hereafter have or claim against the other, including, but not limited to homestead, dower, and all rights and claims in and to the property of the other of every kind, nature, and description, whether real, personal, beneficial, community, marital, non-marital, or mixed, now owned or which hereafter may be acquired by either of them and further including all rights and claims in and to the estate of the other. The parties also agree that it is in the best interest of their children to settle all issues relating to their respective obligations regarding their children, including, but not limited to, child custody, parenting time, college expenses and support. To this end, the parties have each made complete disclosure of all assets.

1.06 Each party acknowledges that each is sufficiently conversant with regard to all of the wealth, property and income of the other and any of their respective rights thereto to enter into this Agreement. The parties acknowledge that each has been informed to their respective satisfaction as to the wealth, property,

estate and income of the other, and that each has been fully informed of his or her respective rights and obligations in the premises. The parties have been advised that they may attempt to compel discovery and inspection of the personal and business financial books and records of the other party with accountants, appraisers, attorneys, and other investigating, appraising and evaluating [*sic*] any and all of the personal and business assets, liabilities, and income of the other. Each party has specifically waived the exercise of these rights to the extent not pursued and has elected to take no further steps in connection with such discovery, investigation, appraisal, or evaluation. Each party expressly states that no representation has been made to him or her by the other party or his or her attorney other than what is contained in this Agreement.

1.07 [Wujcik] and [plaintiff] expressly state that they have voluntarily entered into this Agreement free from any duress and coercion and with full knowledge and understanding of each and every provision contained in this Agreement. After carefully considering the terms and provisions of this Agreement, each of the parties states that he or she believes that this Agreement is fair and reasonable under the present circumstances and is not unconscionable.

\* \* \*

2.02 Until the entry of a Judgment of Dissolution of Marriage which incorporates this Agreement, either directly or by reference, each party reserves the right to prosecute any action that he or she has brought or may hereafter bring

against the other, including the pending action, and each party reserves the right to defend against any action which may be commenced by the other.

* * *

11.01 [Wujcik] and [plaintiff] each represent and warrant to the other that he or she has duly reported all state and federal income taxes due and owing as a result of his or her income both prior and throughout the marriage from all sources to and including the year 2014.

***

11.03 With respect to all joint tax returns filed by the parties, [Wujcik] and [plaintiff] agree as follows:

A. The parties shall notify the other immediately, in writing, of any deficiency assessment. Either of the parties shall have the right to contest any deficiency assessment received in connection with the filing of joint returns. In the event a party so elects, the other party hereby agrees to cooperate fully with the contesting party's selected representative in contesting said assessment, including the execution of any and all documents and the furnishing of testimony, if necessary and appropriate in pursuing said contest. [Wujcik] shall be solely responsible for payment of the amount ultimately determined to be due thereon, together with interest and penalties, and any and all expenses that may be incurred if he decides to contest the assessment.

B. Should either party hereafter deem it necessary or advisable to file an amended joint state or federal return for any previous year or years, the other party agrees to execute such returns. Each party's agreement herein to execute such amended returns is conditioned upon the requesting party providing the other party with a written agreement that any Amended Tax Return shall pay and defray any tax, interest, penalties and all expenses ultimately determined to be due thereon, and save, indemnify and hold harmless the other with respect to any such return to the same extent and in the same respects as any other joint tax return referred to in this Agreement."

¶ 9    The parties also executed a joint parenting agreement. In it, the parties agreed that it was in the best interests of their three minor children that Wujcik have custody, parenting rights, and responsibilities for the children and that their primary residence remain with him. Wujcik also assumed all of the financial obligations for the children, including medical, dental, psychiatric, psychological, orthodontic, health insurance, and extracurricular activities. He also assumed responsibilities for the children's college education expenses, for which college accounts had already been created and substantial sums of money set aside.

¶ 10    The marital settlement agreement provided that Wujcik would pay plaintiff $5,000 per month in maintenance until September 1, 2019. The amount and duration of the maintenance term were made nonmodifiable and nonreviewable. Wujcik also agreed to pay plaintiff's car lease payments and car insurance premiums until November of 2016, when the lease expired. At the

expiration of the lease, Wujcik would pay plaintiff $25,000 towards the purchase of another vehicle.

¶ 11 The marital settlement agreement contained a "ride-through" provision, *i.e.*, maintenance payments would not terminate upon plaintiff's remarriage or entry into another conjugal relationship. Wujcik waived his right to receive maintenance, alimony, or spousal support of any kind from plaintiff, whether past, present, or future. These terms were also made nonmodifiable. Wujcik also agreed to maintain a life insurance policy unencumbered in at least $500,000 with his children as the sole, irrevocable beneficiaries of such policy.

¶ 12 The parties agreed that title to the family residence at 3123 Old McHenry Road in Long Grove, Illinois, would be held solely in Wujcik's name. Upon entry of judgment on the agreement, plaintiff would execute a quitclaim deed conveying her rights in the property to Wujcik. In consideration of this agreement, plaintiff retained assets described in "Exhibit B," the asset division sheet. Plaintiff's assets included the leased 2013 Cadillac SRX, and her non-marital property, totaling $145,000. Wujcik's non-marital property totaled $787,115.

¶ 13 The parties agreed that the fair market value of the Long Grove home was $1,200,000. The property was mortgaged for $563,726 and had an equity value of $635,274. Prior to the execution of the marital settlement agreement, Wujcik gave plaintiff the equivalent of her share of the equity in the home from money realized from Wujcik's sale of another property. Wujcik would retain sole possession of the marital residence and be responsible for monthly mortgage payments and real estate taxes.

¶ 14 On April 29, 2015, the court entered judgment for dissolution of marriage.

¶ 15                                    B. Post-Judgment Litigation

¶ 16    Nearly two years after the entry of judgment for dissolution of marriage, plaintiff retained attorney Sally Lichter to explore the possibility of obtaining child support for the couple's daughter, who had begun living with plaintiff in May of 2017. In a letter dated March 9, 2017, Lichter informed Wujcik that plaintiff was seeking an additional $1,500 per month to assist her with their daughter's living expenses.

¶ 17    Wujcik replied via email, informing Lichter that he continued to maintain sole residential custody of their children, but that plaintiff had accepted his offer of increased visitation. Wujcik maintained that plaintiff was reimbursed for any and all expenditures related to their children while in her care. She personally incurred no costs nor provided any monetary benefits to the children. Plaintiff did not pay for any meals, entertainment costs, supplies, or purchases, including clothes.

¶ 18    On April 14, 2017, plaintiff informed Lichter that she did not wish to pursue the matter of child support any further.

¶ 19    In the meantime, on March 3, 2017, plaintiff had filed a complaint in the instant case. Plaintiff alleged that defendant committed legal malpractice in her representation of plaintiff in the divorce proceeding.

¶ 20    On August 8, 2017, the trial court granted defendants' motion to dismiss. Plaintiff was granted 28 days to file a first amended complaint.

¶ 21    On September 5, 2017, plaintiff filed her first amended complaint. In it, she alleged that in early 2014, Wujcik instituted a dissolution of marriage proceeding against her in Lake County,

Illinois. After consulting with another attorney, plaintiff retained Bush to represent her in the dissolution proceeding.

¶ 22   Plaintiff alleged that defendant breached the standard of care by: (1) failing to conduct discovery to determine Wujcik's true income and assets; (2) failing to determine whether the marital residence was marital or non-marital property; (3) failing to depose Wujcik; (4) failing to conduct discovery against third parties or non-party witnesses to determine Wujcik's true income; (5) failing to obtain Wujcik's 2014 and 2015 tax returns prior to advising plaintiff to accept the agreement; (6) falsely informing plaintiff that until the judgment for dissolution was entered she could still litigate the matter; (7) advising plaintiff that the agreement was the best deal she could get and would not get as good a deal after a trial; (8) advising plaintiff to accept a non-permanent, nonreviewable maintenance award of $5,000 per month for only four years; (9) failing to utilize the financial planner's valuation numbers for retirement accounts and assets in drafting the agreement; and (10) otherwise breaching the retainage agreement.

¶ 23   Plaintiff alleged that absent "complete discovery" to determine the true value of Wujcik's business and assets that Bush should not have dispensed advice to her. Plaintiff averred that Bush's actions and inaction damaged her in excess of $840,000. The alleged damages included a $100,000 shortfall in marital assets where the calculations of a financial planner had been disregarded.

¶ 24   Plaintiff maintained that she should have received maintenance for 80% of the years that she was married, *i.e.*, a total of 13 years. Plaintiff opined that her maintenance award for the first four years should have been $480,000 and that she should have received an additional $500,000 for the nine remaining years.

¶ 25    Plaintiff alleged that defendant pressured her into accepting the maintenance award and that in addition to being half of what it ought to have been that it should not have been made nonreviewable. Plaintiff admitted, however, that her calculation of maintenance was based on her belief that Wujcik's business was worth several million dollars, a belief that resulted in calculations that were "just rhetorical." In actuality, plaintiff had no idea how much money Wujcik actually made, and plaintiff admitted that she had nothing to substantiate these numbers, which were simply based on her and Wujcik's "lifestyle." Plaintiff also admitted that she was the one who had determined the $5,000 per month maintenance amount, which Wujcik agreed to, and that this number was used as a baseline thereafter.

¶ 26    On October 27, 2017, defendants filed a motion to dismiss plaintiff's first amended complaint.

¶ 27    On November 27, 2017, plaintiff filed a response to defendants' motion to dismiss plaintiff's first amended complaint.

¶ 28    On December 4, 2017, defendants filed a reply to plaintiff's response to defendants' motion to dismiss plaintiff's first amended complaint.

¶ 29    On December 13, 2017, the trial court denied defendants' motion to dismiss plaintiff's first amended complaint. Defendants were ordered to answer the complaint within 28 days, and discovery commenced.

¶ 30    On January 10, 2018, defendants filed an answer to plaintiff's complaint. The respective parties filed answers to interrogatories. In the 15 months that followed, depositions were also taken.

¶ 31    On September 24, 2018, plaintiff was deposed. Plaintiff testified that her marriage deteriorated after Wujcik bought the family home in Long Grove at an auction without her knowledge or consent. The house was everything that plaintiff did not want. Plaintiff stayed with Wujcik for the next five years but eventually decided to divorce him.

¶ 32    Initially, the parties attempted to achieve a divorce through mediation. Such efforts failed when the mediator, Sara Stolberg informed her that based on the materials that the parties had provided, Stolberg believed that plaintiff would have to pay Wujcik maintenance. Plaintiff testified that with respect to the couple's assets, Wujcik felt that "every penny belonged to him" because their assets were derived from a trust held by him that he established prior to the marriage.

¶ 33    When the mediation failed, Stolberg gave plaintiff and Wujcik the names of two attorneys. Plaintiff and Wujcik each picked one to represent them. After hiring and firing Margaret Zuleger, plaintiff, hired Bush. Plaintiff gave Bush the same documents that she had previously given Zuleger.

¶ 34    Plaintiff stated that the couple's jointly filed tax returns showed that Wujcik's annual income was between $80,000 and $130,000. Plaintiff testified that she "was not involved with any financial stuff" and neither reviewed nor approved the filed tax returns. When plaintiff saw a document that indicated Wujcik made $80,000 one year and $100,000 another year, plaintiff thought that this was impossible given their lifestyle. Plaintiff testified that she shared these thoughts with Bush, informing her that the couple spent about $30,000 a month so that it did not "add up."

¶ 35    Plaintiff testified that Wujcik owned a recruiting company, Chase Winters, and operated out of the family home. After Wujcik initiated the divorce action, plaintiff learned that she was named an employee of the company. Additionally, she learned that a 401(k) plan had been set up in her name, despite the fact that she never signed any paperwork and was never an employee of the company. Plaintiff had, however, seen some W-2s in her name for 2007 and 2008 and had asked Wujcik about them because she had never received any money from his company.

¶ 36    Plaintiff alleged that Wujcik forged her name on a number of documents, including the mortgage for a previous house in Highland Park and the current Long Grove house, but also admitted that she had occasionally signed documents without asking what they were or knowing their contents.

¶ 37    Plaintiff was "deflated" by the settlement offer because she knew Wujcik had more money. Plaintiff testified that Bush "lacked confidence" to try to get plaintiff more money by investigating the business and said that Bush told her that if she went to trial, it would cost plaintiff more money and possibly result in her receiving the same sum or even less than what Wujcik had offered.

¶ 38    Plaintiff admitted that Bush was "the one that suggested we could possibly get a forensic attorney to do that, but she didn't encourage it because, once again, it was very costly and people who own their own business, such as Tim, the outcome might not have been what we were hoping for."

¶ 39    Plaintiff also admitted receiving a letter from Bush dated January 14, 2015, memorializing a conversation between the two of them that day. Plaintiff said that when she and Bush discussed the discrepancy between the filed tax returns and the couple's lifestyle, it was "more of a

discouragement and not a debate." Plaintiff agreed to the terms set out in the marital settlement agreement because she was "frustrated." She admitted to signing each page of the agreement but, when asked whether she understood its contents, stated: "probably not."

¶ 40    Plaintiff also admitted that while Bush represented her, that cost was a concern because Wujcik had refused to assume plaintiff's attorney fees. Plaintiff testified: "I was wanting to be done with it, but I also felt like – I truly feel had [defendant] given me the encouragement to go further because we could get more, I would have; but when I didn't get that encouragement, yes, I was ready to settle."

¶ 41    Plaintiff testified that when she settled with Wujcik based on Bush telling her that this was the best deal that she was going to get, that plaintiff felt like she "lost." Deep down inside plaintiff felt like she could get more. Plaintiff had put her faith in Bush to fight for her, and if Bush did not do so, plaintiff did not know what she could do about it. Plaintiff did not think about going to see another attorney because she was exhausted, did not want to, and because she believed that Wujcik would put up a hard fight.

¶ 42    As her marriage was ending, plaintiff began a relationship with Chip Woods, who lived in Texas. Plaintiff intended to move to Texas but changed her mind immediately after arriving there.

¶ 43    Two years after the divorce, plaintiff's daughter began living with her. Plaintiff consulted attorney Sally Lichter to see if she could get additional monetary support from Wujcik. According to plaintiff, Lichter recommended that she seek out an attorney to determine whether she had a potential malpractice claim against defendant.

¶ 44     Lichter was deposed on January 10, 2019. In 2017, plaintiff consulted with her on a post-divorce matter. Plaintiff wanted child support for the couple's daughter, who was now living with plaintiff. Lichter prepared a letter for plaintiff addressed to Wujcik requesting an additional $1,500 per month in child support. In the process of representing plaintiff, Lichter looked at the marital settlement agreement. She asked plaintiff why the agreement only provided for five years' maintenance and why the house was considered a nonmarital asset.

¶ 45     Lichter provided no testimony regarding the standard of care and explicitly testified that she had no opinion on whether Bush violated the standard of care. Lichter testified that plaintiff decided not to go forward with her efforts to gain child support because she believed that it would be extremely difficult to work with Wujcik and, if successful, her daughter might be forced to change schools.

¶ 46     Bush was deposed on April 11, 2019. Bush had practiced law in Barrington, Illinois, for 42 years, and her practice was limited to family law. In 2014, Super Lawyers recognized Bush as one of Illinois's top 50 women lawyers. Bush testified that plaintiff was initially represented by Margaret Zuleger but later hired Bush because plaintiff felt that Zuleger was not moving the case quickly enough.

¶ 47     Plaintiff told Bush that she did not want to pay for a valuation of Wujcik's business, which was, according to plaintiff, a non-marital asset. Bush testified that she encouraged plaintiff to value the assets by conducting a forensic accounting or at least some discovery to "find out what there was." Discovery would have included depositions, written interrogatories, request of production of documents, forensic accounting, and appraisals. Plaintiff decided not to investigate further

because she wanted the divorce to be quickly concluded. Bush's January 14, 2015 letter memorialized her conversation with plaintiff wherein plaintiff instructed Bush not to initiate any further discovery.

¶ 48   Defendant determined that a $5,000 monthly maintenance award was adequate based on what plaintiff would have been statutorily entitled to. The sum was arrived at based on joint tax returns filed by plaintiff and Wujcik. While the maintenance term was shorter than what plaintiff was statutorily entitled to (750 ILCS 5/504(b-1) (West 2014)), based on Wujcik's income, the dollar amount of the award was higher than what was statutorily required. Additionally, the agreement had a "ride-through" provision that disallowed any change to the maintenance amount even if plaintiff entered into a conjugal relationship or remarried. The agreement also prohibited Wujcik from seeking any modification to the maintenance amount, even if his income decreased. Plaintiff had expressed concern that Wujcik's income could decrease in the future.

¶ 49   Bush testified that no issue existed as to the status of the Long Grove home because it was included in Wujcik's assets, and plaintiff's portion of the equity in the home had been paid out to her from the sale of another one of Wujcik's properties.

¶ 50   On July 15, 2019, defendants filed a motion for summary judgment pursuant to 735 ILCS 5/2-1005 (West 2014). In it, defendants alleged that summary judgment should be granted for several reasons. Defendants maintained that the undisputed facts established that Bush advised plaintiff of the opportunity to conduct discovery, and plaintiff declined to do so. Defendants maintained that the deposition testimony established that Bush complied with the standard of care. Defendants further maintained that no named expert supported plaintiff's malpractice claim.

Plaintiff also failed to establish proximate cause or damages based on Bush's representation of her.

¶ 51     Defendants maintained that the evidence showed that when plaintiff inquired whether an investigation into or discovery of Wujcik's business could be conducted based on her belief that he had more money than was reflected on their joint tax returns or financial disclosures, Bush told her that it could but would cost additional time and money. Despite Bush encouraging plaintiff to conduct discovery, including forensic accounting, depositions, interrogatories, requests for production, and appraisals, plaintiff decided not to investigate further. The conversation between Bush and plaintiff was memorialized in Bush's January 14, 2015 letter.

¶ 52     Defendants maintained that the evidence established that plaintiff told defendant that Wujcik's business was a non-marital asset that predated her marriage and that she did not want to pay for its valuation. Defendants maintained that plaintiff failed to provide any support to establish that Wujcik's business was part of the couple's marital assets or that plaintiff had any interest in the business.

¶ 53     Relying on *Barth v. Reagan*, 139 Ill. 2d 399 (1990), defendants maintained that plaintiff failed to present evidentiary facts to support the elements of a legal malpractice claim. Such an action required that plaintiff establish (1) an attorney-client relationship, (2) a breach of the standard of care, and (3) but for the breach of the standard of care, plaintiff would have received a different sum of money or benefit. Defendants alleged that plaintiff had only established the existence of an attorney-client relationship and failed to show a breach of the standard of reasonable care, proximate cause, or damages. Attorney Lichter's deposition testimony failed to

satisfy plaintiff's burden of proof. Defendants also alleged that plaintiff failed to establish that, but for the alleged breach of duty by defendant, that plaintiff would have been successful in obtaining a better result.

¶ 54    Defendants further maintained that it was plaintiff's responsibility to ensure the accuracy of her own tax filings and was reasonable for defendants to rely on the joint filings. Defendants also relied on portions of the marital settlement agreement to support their request for summary judgment.

¶ 55    On August 19, 2019, plaintiff filed a response to defendants' motion for summary judgment. In her first argument, plaintiff opposed the motion based on her failure to name an expert witness. Plaintiff alleged that the trial court should deny defendants' motion on this basis where the motion was premature. Alternatively, plaintiff argued that the court should grant her leave to disclose an expert's opinions prior to the court ruling on defendants' motion.

¶ 56    In the three arguments that followed, plaintiff maintained that the evidence produced in the course of discovery established a breach of the standard of care, proximate cause, and resulting damages. Plaintiff relied on "Exhibit A," an affidavit authored by her, to support her claim that a genuine issue of material fact existed as to whether or not she told Bush not to conduct discovery. In pertinent part, the affidavit alleged:

> "4. I never told [Bush] that I did not want her to conduct discovery in my divorce.
>
> 5. [Bush] did not encourage nor advise me that discovery was necessary.

6. When reviewing my former husband's financial documents with [Bush] I told her the numbers were wrong and that he makes more money than he claimed.

7. [Bush] never explained to me what nonreviewable maintenance was, prior to signing the Marital Settlement Agreement.

* * *

11. I did not become aware that I was on the Highland Park home and Long Grove home mortgages until after the divorce.

12. Sally Lichter told me that my maintenance award should have been for thirteen years, not for four years.

13. Sally Lichter told me that my maintenance award should not have been nonreviewable."

¶ 57    Plaintiff also relied on her affidavit to support her claim that she had sufficiently shown that, but for the actions and inactions of Bush that plaintiff would have gotten a better result.

¶ 58    The conclusion of plaintiff's response to defendants' motion for summary judgment averred:

"Due to the factual questions that exist as to all of the issues raised by [Bush]; *i.e.*, breach, proximate cause, and damages, summary judgment at this point must be denied and reserved for a trier of fact. Factual disputes further demonstrate that summary judgment would be improper. More importantly, all of the evidence has not yet been presented before this Court, the parties have yet to begin expert testimony on the factual issues. Thus, this Honorable Court must deny the Motion

for Summary Judgment and set expert disclosure dates or in the alternative, allow for [plaintiff] to obtain an expert affidavit prior to ruling on the motion for Summary Judgment.

WHEREFORE, your Plaintiff, TONI A. ROSA, prays this Honorable Court denies Defendants' ANNA M. BUSH AND BUSH & HEISE'S Motion for Summary Judgment, or in the alternative, your Plaintiff TONI A. ROSA prays for a reasonable time to obtain an expert affidavit prior to the Court's ruling on this Motion, and for any other relief deemed equitable and just."

¶ 59 On September 16, 2019, defendants filed a "Motion to Strike Plaintiff's Affidavit and Extension of Time to File Reply in Support of Summary Judgment." Defendants maintained that plaintiff's affidavit was noncompliant with Illinois Supreme Court Rule 191 (Ill. S. Ct. R. 191 (eff. Jan. 4, 2013)), where it contained statements that were both conclusory and inadmissible and further directly contradicted evidence and testimony adduced in this matter. Defendants maintained that plaintiff's assertion that she was not encouraged to conduct discovery nor advised on such matter were "self-serving statements made to attempt to contradict a detailed, unequivocal and conclusive record." Defendants further maintained that plaintiff's reference to what Lichter told her was hearsay and inadmissible.

¶ 60 On November 27, 2019, the court held a hearing on defendants' motion for summary judgment and motion to strike plaintiff's affidavit. After making extensive findings, the trial court granted both defense motions.

¶ 61    On December 23, 2019, plaintiff filed a motion to reconsider the trial court's granting of defendants' motion for summary judgment and motion to strike plaintiff's affidavit. Plaintiff requested that the trial court grant her leave to amend her stricken affidavit to create a genuine material fact issue. The proposed amended affidavit now alleged:

"4. I never told [Bush] that I did not want her to conduct discovery in my divorce. I did not at any time receive the letter dated January 14, 2015. The only materials I ever received from [Bush] in the U.S. mail were bills. All written communication was through email.

5. [Bush] did not encourage nor advise me that discovery was necessary. In fact, [Bush], prior to January 14, 2015, advised me that discovery would cost so much that it was not worth it. I do not recall the exact date of our conversation, but it was in-person and not on the telephone. It would not be part of the December phone conferences.

6. When reviewing my former husband's financial documents with [Bush] I told her that he makes more money than he claimed. I do not recall the date of this conversation, but this conversation was verbal.

7. [Bush] never explained to me, verbally or in writing, what nonreviewable maintenance meant nor did she inform me of any statute as to nonreviewable maintenance. Instead [Bush] told me, verbally, that the maintenance award that I received is a good deal and that I should accept it because trial will be costly, and I

may get less at trial. I do not recall the date of this conversation, but it was prior to the prove up on April 29, 2015.

8. If [Bush] would have explained to me what the statute as to maintenance stated as to the statutory basis and the amount for maintenance based on the length of my marriage, I would not have agreed to signing the Marital Settlement Agreement, which only gave me maintenance for only four years.

9. I entered into the Marital Settlement Agreement based on the advice [Bush] gave me prior to April 29, 2015, that this was the best outcome I was going to receive.

10. For the first time, I became aware that I was on home mortgages for the Highland Park home and the Long Grove after the divorce, sometimes after April 29, 2015, when I was reviewing my credit score and noticed the mortgages listed."

¶ 62    On February 11, 2020, defendants filed a response to plaintiff's motion to reconsider.

¶ 63    On September 16, 2020, the trial court denied plaintiff's motion to reconsider.

¶ 64    On October 15, 2020, plaintiff filed a notice of appeal.

¶ 65                                    II. ANALYSIS

¶ 66    On appeal, plaintiff alleges that the trial court erroneously granted defendants' motion for summary judgment. Plaintiff maintains that the trial court should have (1) denied the motion based on the evidence before it, (2) denied the motion based on her claim that it was prematurely brought, or (3) deferred ruling on the motion. Additionally, plaintiff avers that the trial court erroneously granted defendants' motion to strike her affidavit, specifically, paragraphs 4 and 5.

¶ 67    Defendants maintain that the trial court's entry of judgment in their favor on both motions

was proper. For the reasons that follow, we agree with defendants.

¶ 68         A. The Trial Court Properly Granted Defendants' Motion for Summary
                  Judgment Where the Evidence Established That There
                       Was No Genuine Issue of Material Fact

¶ 69                              1. Standard of Review

¶ 70    Summary judgment is appropriate where the pleadings, depositions, and admissions on

file, together with any affidavits and exhibits, when viewed in the light most favorable to the

nonmoving party, indicate that there is no genuine issue of material fact and that the moving party

is entitled to judgment as a matter of law. 735 ILCS 5/2–1005(c) (West 2014); *Suburban Real Est.

Servs., Inc. v. Carlson*, 2022 IL 126935, ¶ 15; *Universal Underwriters Insurance Company v.

Judge & James, Ltd.*, 372 Ill. App. 3d 372, 377-78 (2007).

¶ 71    "In determining whether a genuine issue as to any material fact exists, a court must construe

the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in

favor of the opponent." *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518 (1993). We

review cases involving summary judgment *de novo. Suburban Real Estate Services*, 2022 IL

1269365, ¶ 15; *Universal Underwriters*, 372 Ill. App. 3d at 377-78. We may affirm the trial court's

ruling on any basis appearing in the record. *Jinkins v. Evangelical Hospitals Corp.*, 336 Ill. App.

3d 377, 384-85 (2002).

¶ 72                              2. Claims of Legal Malpractice

¶ 73    A complaint of legal malpractice requires that plaintiff prove the existence of an attorney-

client relationship establishing a duty on the part of the attorney, a negligent act or omission

constituting a breach of that duty, a proximate causal relationship between the breach and the damages sustained, and actual damages. *Governmental Interinsurance Exchange v. Judge*, 221 Ill. 2d 195, 199 (2006); *Universal Underwriters*, 372 Ill. App. 3d at 377.

¶ 74     "An attorney must exercise a reasonable degree of care and skill in the representation of his clients." *Los Amigos Supermarket, Inc. v. Metropolitan Bank and Trust Co.*, 306 Ill. App. 3d 115, 130 (1999). The plaintiff bears the burden of pleading and proving that "but for" the attorney's negligence, the plaintiff would have succeeded in the underlying suit. *Universal Underwriters*, 372 Ill. App. 3d at 377. Therefore, a legal malpractice plaintiff must litigate a "case within a case." *Tri-G, Inc. v. Burke, Bosselman Weaver*, 222 Ill. 2d 218, 226-27 (2006). This is because malpractice cannot exist in the absence of the loss of an underlying suit. *Fabricare Equipment Credit Corp v. Bell, Boyd & Lloyd*, 328 Ill. App. 3d 784, 788 (2002).

¶ 75     "Even if negligence on the part of the attorney is established, no action will lie against the attorney unless that negligence proximately caused damage to the client." *Northern Illinois Emergency Physicians v. Landau, Omahana, & Kopka, Ltd.*, 216 Ill. 2d 294, 306-07 (2005). The "injury" in a legal malpractice claim is the pecuniary injury to an intangible property interest caused by the lawyer's negligent act or omission. *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 306.

¶ 76     Where a plaintiff contends that her attorney negligently represented her in a divorce action, she must prove that, but for the defendant's negligence, she would have received a larger share of the marital estate. *Weisman v. Schiller, Ducanto and Fleck, Ltd*, 368 Ill. App. 3d 41, 52 (2006). Actual damages are never presumed. *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 306-

07. Damages are established by showing that the plaintiff suffered a monetary loss as a result of the attorney's negligence and may not be proved by speculation or conjecture. *Id.*

¶ 77      Where the pleadings, depositions, and admissions on file, along with the affidavits, show that there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014). Summary judgment should only be allowed where the right of the moving party is clear and free from doubt. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007).

¶ 78      In a motion for summary judgment, the movant bears the initial burden of production. *Universal Underwriters*, 372 Ill. App. 3d at 378. The burden is satisfied where the movant presents evidence that left unrebutted would entitle it to judgment as a matter of law or by the movant demonstrating that the plaintiff is unable to prove an element of his cause of action. *Id.* If a plaintiff fails to establish any element of their cause of action, summary judgment in favor of the defendant is proper. *Judge*, 221 Ill. 2d 195, 214-15 (2006).

¶ 79      With these principles in place, we now turn to the trial court's ruling in this matter.

¶ 80                                    3. The Trial Court's Ruling

¶ 81      In granting the defendants' motion for summary judgment, the trial court made the following findings:

>      "As to defendants' motion for summary judgment, in the case of *Adams v.*
>      *Northern Illinois Gas*, 211 Ill. 2d 32, it says in pertinent part, the purpose of
>      summary judgment is not to try a question of fact, but rather, to determine
>      whether a genuine issue of material fact exists. Summary judgment is appropriate

only where the pleadings, depositions, and admissions on file, together with the affidavits if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In determining whether a genuine issue as to any material fact exists, the court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent.

A triable issue precluding summary judgment exists where the material facts are disputed or where the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts.

The use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit; however, it is a drastic means of disposing of litigation, and therefore, should be allowed only when the right of the moving party is clear and free from doubt.

In the case of *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, it says in pertinent part, to prevail in an action for legal malpractice, plaintiff must prove the following elements.

1, the existence of an attorney-client relationship that establishes a duty on the part of the attorney. 2, a negligent act or omission constituting a breach of that duty. 3, proximate cause establishing that but for the attorney's negligence, the plaintiff would have prevailed in the underlying action. 4, damages. An attorney must exercise a reasonable degree of care and skill in the representation of his clients.

The plaintiff must generally present expert testimony to establish the standard of care against which the attorney's conduct must be measured. Failure to present such testimony is generally fatal to a legal malpractice action unless the attorney's negligence is so apparent that a lay person would have no difficulty seeing it.

Proximate causation in a legal malpractice case is generally a factual issue to be decided by the trier of fact. Our Supreme Court has explained that the basis for this principle is that issues that could cause reasonable persons to reach different results should never be determined as questions of law. The debatable qualities of issues such as proximate cause, the fact that fair-minded persons might reach different conclusions, emphasize the appropriateness of leaving such issues to a fact-finding body.

The case of *Barth v. Reagan*, 139 Ill. 2d 399, it says in pertinent part, attorneys are liable to their clients for damages in malpractice actions only when they fail to exercise a reasonable degree of care and skill. The law distinguishes between errors of negligence and those of mistaken judgment.

Generally, the rules of evidence which govern medical malpractice litigation are applicable to legal malpractice suits, except where it is necessary to accommodate differences in the nature of the two professions. Because the concept of *res ipsa loquitur* is not applicable in legal malpractice cases, the standard of care against which the attorney defendants' conduct will be measured must generally be established through expert testimony.

Failure to present expert testimony is usually fatal to a plaintiff's legal malpractice action; however, Illinois courts have recognized that where the common knowledge or experience of lay persons is extensive enough to recognize or infer negligence from the facts or where an attorney's negligence is so grossly apparent that a lay person would have no difficulty in appraising it, expert testimony as to the standard of care is not required.

In the case of *Leon v. Max E. Miller & Son, Inc.*, 23 Ill. App. 3d 694, it says in pertinent part, one is under a duty to learn or know the contents of a written contract before he signs it and is under a duty to determine the obligations which he undertakes by the execution of a written agreement. And the law is that a party who signs an instrument relying upon representations as to its contents when he has had an opportunity to ascertain the truth by reading the instrument and has not availed himself of the opportunity, cannot be heard to say that he was deceived by misrepresentations.

Apart from the above rules, to avoid a contract for false representations, the character of the representation and the circumstances under which it was uttered must have been such as to give the injured person a right to rely thereon.

The gist of plaintiff's amended complaint is that Defendant Bush conducted little or no meaningful discovery, including the valuation of the plaintiff's then husband's company and what his true income was, received very minimal tax return information, did little or nothing to ascertain the true nature of the marital

home being marital or nonmarital, and did little or nothing to discover the true income and assets of the parties.

In an email from the plaintiff to the defendant on November 26, 2014, plaintiff asked defendant what can we do to get this process going, what can we do to make this go quicker.

In an email from the defendant to plaintiff on November 29th, 2014, defendant asked the plaintiff if she was trying to settle this quickly or are we doing the complete investigation that we discussed.

On January 13th, 2015, plaintiff sent a text to Defendant Bush indicating the possibility of looking under rocks and scheduled a phone conference with defendant for January 14th, 2015. Defendant Bush's January 14th, 2015 letter to plaintiff memorializes the phone conversation with plaintiff, in which defendant encouraged and plaintiff declined to proceed with formal discovery.

And that email reads as follows.

'Dear Toni, I want to memorialize our conversation of today, mostly so that you can have this information in black and white letter format rather than just an email or phone conversation.

We talked today about the possibility of looking under the rocks, which means, as we discussed, full discovery. That means that we would issue written interrogatories, a request for the production of documents, income and expense affidavits, (which are actually required by statute but which we have not -- which

have not been exchanged). And based on the responses, future depositions or subpoenas issued to third parties.

To do this and receive any response would likely take 30 to 90 or more days. In all likelihood, in your -- if you issued discovery, they will also do so. This will extend the case for several more months. You can begin the process and later cancel it, if you wish. It can also be very costly to do formal discovery and could cost more than $2,000, if both sides do so.

I always encourage clients to do formal discovery if they have any doubt at all about the honesty of the other party or feel that they are not informed about the finances of either or both parties.

Based on my statements to you about the length of time and cost, you have chosen not to do formal discovery or even complete the income and expense affidavit and you believe that you are comfortable enough with the finances to finish the case. If this is not your understanding of our conversation, please let me know immediately. Very truly yours, Anna Markley Bush.'

Plaintiff acknowledged that she received this letter in her deposition on Page 134. Furthermore, the marriage settlement agreement contains the following language in pertinent part.

[Paragraph] 1.05. In pertinent language, [']Timothy and Toni believe that it is in their best interest to settle between themselves all rights and claims against each other. To this end, the parties have made complete disclosure of all assets.[']

Paragraph 1.06. [']Timothy has had the benefit of counsel of Patti S. Levinson of Patti S. Levinson, P.C. and Toni has had the benefit of counsel of Anna Markley Bush of Bush & Heise. Each party acknowledges that each is sufficiently conversant with regard to all of the wealth, poverty, and income of the other and any of their respective rights to -- thereto to enter into this agreement.

The parties acknowledge that each has been informed to their respective satisfaction as to the wealth, property, estate, and income of the other and that each has been fully informed of his or her respective rights or obligations in the premises.

The parties have been advised that they may attempt to compel discovery and inspection of the personal and business financial books and records of the other party with accountants, appraisers, attorneys, and others investigating, appraising, and evaluating any and all of the persona and business assets -- personal and business assets, liabilities, and income of the other.

Each party has specifically waived the exercise of these rights to the extent not pursued and has elected to take no further steps in connection with such discovery, investigation, appraisal, or evaluation. Each party expressly states that no representation has been made to him or her by the other party or his attorney other than that which is contained in this agreement.[']

Paragraph 1.07. [']Timothy and Toni expressly state that they have voluntarily entered into this agreement free from any duress and coercion and with full

knowledge and understanding of each and every provision contained in this agreement.

 After carefully considering the terms and provisions of this agreement, each of the parties states that he or she believes that the agreement is fair and reasonable under the circumstances and is not unconscionable.[']

 Plaintiff initialed each page of the settlement agreement and signed the last page. Based on the various emails and depositions, in my opinion, no genuine issue as to any material fact exists, and as such, defendants' motion for summary judgment is granted. Thanks."

¶ 82                    4. Application of *De Novo* Review

¶ 83     We have set forth the trial court's findings verbatim because they provide ample support for our determination that the trial court properly granted defendants' motion for summary judgment. The trial court correctly determined that plaintiff failed to establish a breach of the standard of care based on her deposition testimony and emails.

¶ 84     Plaintiff's allegations all stemmed from her belief that Bush failed to undertake the necessary discovery to value Wujcik's income and assets properly. According to plaintiff, such failure resulted in a marital settlement agreement that deprived plaintiff of what she should have received in terms of her monthly maintenance, the duration of that maintenance, proceeds from Wujcik's business, and a correctly calculated amount of proceeds from a retirement fund.

¶ 85     Plaintiff's allegations were insufficient to withstand summary judgment based on the evidence presented. The evidence established no breach in the duty of care where Bush's failure

to conduct additional discovery resulted from plaintiff's knowingly made decision not to have her do so. We have reviewed the record in its entirety and agree with the trial court's conclusion that plaintiff failed to establish a genuine issue of material fact.

¶ 86    Defendant misplaces reliance on *Wolfe v. Wolf*, 375 Ill. App. 3d 702, 704-05 (2007). *Wolfe* involved the dismissal of a complaint under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619) (West 2000)), not an order of summary judgment. Additionally, the case is distinguishable where the trial court's ruling in *Wolfe* was based on the doctrine of judicial estoppel. *Id*. at 704-05.

¶ 87    In this case, while the trial court referenced the terms of the marital settlement agreement in its findings, it did so to underscore that such terms were consistent with plaintiff's deposition testimony and emails, which indicated her waiver of the right to conduct additional discovery. The trial court did not grant summary judgment based on the doctrine of judicial estoppel, and we find no error in the trial court's reference to the contents of the marital settlement agreement.

¶ 88    We next address plaintiff's affidavit wherein she denies that she told Bush to not conduct additional discovery. For reasons that will later be discussed in greater detail, we find that the trial court properly granted defendants' motion to strike the affidavit. Even if we were to consider plaintiff's assertion in her affidavit that she never told Bush that she did not want Bush to conduct discovery, that assertion stands in clear contradiction to Bush's own deposition testimony and email communications. Even if considered, it did not create a genuine issue of material fact. *Pedersen v. Joliet Park Dist.*, 136 Ill. App. 3d 172, 175-76 (1985) (Plaintiff cannot create a genuine issue of material fact by contradicting a statement made in his deposition with a later affidavit.)

¶ 89    The evidence did not establish the existence of a genuine issue of material fact where it showed that plaintiff knew that additional discovery could be conducted, knew that it was customarily conducted, knew what such discovery could consist of, and instructed Bush not to do so. Bush, in turn, followed her client's instructions, as she was obliged to do. Ill. R. Prof'l Conduct R. 1.2(a) (eff. Jan 1, 2016).

¶ 90    In pertinent part, Rule 1.2 provides:

> "(a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. *** "

¶ 91    The first comment to Rule 1.2 further provides:

> "[1] Paragraph (a) confers upon the client the ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law and the lawyer's professional obligations. The decisions specified in paragraph (a), such as whether to settle a civil matter, must also be made by the client. See Rule 1.4(a)(1) for the lawyer's duty to communicate with the client about such decisions. With respect to the means by which the client's objectives are to be pursued, the lawyer shall consult with the client as required by Rule 1.4(a)(2) and

may take such action as is impliedly authorized to carry out the representation." Ill. R. Prof'l Conduct (201) R. 1.2, Committee Comments (eff. Jan. 1, 2010).

¶ 92    In turn, Rule 1.4(a)(2) requires a lawyer to "reasonably consult with the client about the means by which the client's objectives are to be accomplished." Ill. R. Prof'l Conduct R. 1.4(a)(2) (eff. Jan. 1, 2010).

¶ 93    We conclude that plaintiff's deposition testimony and emails showed that plaintiff relieved Bush of any obligation to conduct further discovery in this matter. Bush's conduct also comported with the aforementioned Rules of Professional Conduct.

¶ 94    We agree with defendants that plaintiff's claim boils down to a complaint that Bush failed to properly "encourage" her to undertake additional discovery:

> "I was wanting to be done with it, but I also felt like – I truly feel [Bush] given me the encouragement to go further because we could get more, I would have; but when I didn't get that encouragement, yes, I was ready to settle."

¶ 95    Coercion has been defined as "the imposition, oppression, undue influence, or the taking of undue advantage of the stress of another, whereby that person is deprived of the exercise of her free will." *In re Marriage of Gorman*, 284 Ill. App. 3d 171, 180 (1996) (citing *Flynn v. Flynn*, 232 Ill. App. 3d 394, 401 (1992)). Plaintiff allegations of "coercion" or undue "pressure" are neither borne out by the evidence nor supported by relevant case law.

¶ 96    In conclusion, having reviewed the pleadings, depositions, and admissions on file, together with any affidavits and exhibits presented, when viewed in the light most favorable to the plaintiff, we find that summary judgment was proper in the absence of any genuine issue of material fact.

¶ 97                    B. The Trial Court Did Not Rule Prematurely on
                          Defendants' Motion for Summary Judgment

¶ 98    Plaintiff also contends that the trial court's order granting summary judgment was premature since she had not yet named an expert witness. Plaintiff maintains that the trial court should have denied defendants' motion for summary judgment or deferred ruling on it until controlled expert discovery was completed pursuant to Rule 213(f)(3). Ill. S. Ct. R. 213 (eff. Jan. 1, 2018).

¶ 99    Having previously found summary judgment proper, based on grounds wholly unrelated to the failure to obtain an expert, we fail to see, as a threshold matter, how an expert could alter that conclusion. Put differently, it is difficult to conceive how any expert could cure the deficiency that resulted from the evidence, which showed that plaintiff waived her right to conduct additional discovery.

¶ 100   Nevertheless, to ensure full consideration of plaintiff's claims on appeal, we consider her charge that the trial court's ruling was premature. For the reasons that follow, we find that it was not.

¶ 101                              1. Standard of Review

¶ 102   A trial court has extremely broad discretionary powers regarding pretrial discovery. *Hayward v. C.H. Robinson Co.*, 2014 IL App (3d) 130530, ¶ 45. As such, our review of such rulings is highly deferential. *People v. Taylor*, 2011 IL App (1st) 093085, ¶ 23. A trial court's pretrial discovery rulings will not be interfered with on appeal absent a manifest abuse of discretion. *Hayward*, 2014 IL App (3d) 130530, ¶ 45. A court abuses its discretion when its

discovery ruling is "arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Taylor*, 2011 IL App (1st) 093085, ¶ 23.

¶ 103                                              2. The Pleadings

¶ 104   We begin with a discussion of the factual development of this claim in the trial court. Defendant issued interrogatories requesting disclosure of experts pursuant to Rule 213(f)(3). Specifically, defendant sought the following information:

> "8. State the names and addresses and identities of all lawyers and attorneys or experts in any field who have been contacted for expert opinion (excluding purely consulting experts) by you or your attorney, or anyone acting on your behalf, regarding any facts alleged in the complaint. As to each person, state the following:
>
> (a) Name, business and residence address, and telephone number;
>
> (b) Area of expertise;
>
> (c) Whether his opinion relates to the liability aspect or to the damages aspect of your claim or both;
>
> (d) Identify, with particularity, any and all statements, reports, letters, tape recordings, photographs, memoranda, or documentation of any type furnished by said expert or experts."

¶ 105   Plaintiff responded to this request in the following manner:

> "See 213F disclosures. Experts will be disclosed in the time frame set forth by the Court, when they do so.

Investigation continues, Plaintiff reserves the right to supplement this answer."

¶ 106   Defendants also sought disclosure of any "controlled expert witnesses" who would testify on plaintiff's behalf. In response to this request, plaintiff replied, "Rule 213(f)(3) witnesses will be disclosed in the time frame set by the court in any 218 Case Management Order."

¶ 107   As has been previously discussed, defendants' motion for summary judgment rested on multiple grounds. One such ground was plaintiff's failure to disclose the name of any expert witness to support plaintiff's malpractice claims. Another was that the affirmative evidence adduced in the discovery process affirmatively disproved three elements of a claim of attorney malpractice: no breach of the standard of care, no proximate cause, and no resulting injury to plaintiff.

¶ 108   Plaintiff responded to defendants' motion on two bases. First, plaintiff defended against defendants' charge that she failed to name an expert, maintaining that such disclosure was not required until the trial court ordered discovery pursuant to Rule 213(f)(3) and that the trial court should defer ruling on defendants' motion until she was given an opportunity to do so. This alternative request was not accompanied by a Rule 191(b) affidavit.

¶ 109   Second, plaintiff disputed defendants' claim that the evidence to date supported the granting of summary judgment, maintaining that it established the existence of highly disputed questions of fact.

¶ 110   We now turn our attention to the question of whether the trial court abused its discretion by ruling prematurely on defendants' motion for summary judgment.

¶ 111                    3. The Trial Court Did Not Abuse Its Discretion

¶ 112   At the hearing on defendants' motion for summary judgment, plaintiff abandoned her written request that the trial court permit her to produce an expert witness before ruling on the motion. She neither sought a continuance nor urged the trial court to defer ruling on defendants' motion. Rather, the parties engaged in a disputed hearing devoted to whether the evidence developed until that point supported a grant of summary judgment. And as has been extensively discussed, the trial court granted defendants' motion for summary judgment based solely on its determination that the evidence affirmatively established no genuine issue of material fact, not based on plaintiff's failure to disclose an expert opinion.

¶ 113   Defendants maintain that plaintiff's claim fails where she did not comply with Rule 191(b). Illinois Supreme Court Rule 191(b) provides:

> "(b) When Material Facts Are Not Obtainable by Affidavit. If the affidavit of either party contains a statement that any of the material facts which ought to appear in the affidavit are known only to persons whose affidavits affiant is unable to procure by reason of hostility or otherwise, naming the persons and showing why their affidavits cannot be procured and what affiant believes they would testify to if sworn, with his reasons for his belief, the court may make any order that may be just, either granting or refusing the motion, or granting a continuance to permit affidavits to be obtained, or for submitting interrogatories to or taking the depositions of any of the persons so named, or for producing documents in the possession of those persons or furnishing sworn copies thereof.

The interrogatories and sworn answers thereto, depositions so taken, and sworn

copies of documents so furnished, shall be considered with the affidavits in

passing upon the motion."

¶ 114   A party that fails to attach a Rule 191(b) affidavit to its pleading to assert his need for

additional discovery in order to oppose a motion for summary judgment may not later seek reversal

of the trial court's order on the basis that it was denied important discovery. *Cordeck Sales, Inc. v.*

*Construction Systems Inc.*, 382 Ill. App. 3d 334, 345 (2008). The failure to comply with Rule

191(b) will defeat a claim of error based on a trial court's disallowance of additional time to

conduct discovery. *Kane v. Motorola, Inc.*, 335 Ill. App. 3d 214, 225 (2002). A plaintiff may not

complain on appeal that a circuit court improperly denied discovery when it failed to explain the

need for discovery in Rule 191(b) affidavit. *MEP Construction, LLC v. Truco MP, LLC*, 2019 IL

App (1st) 180539, ¶ 20.

¶ 115   Plaintiff maintains, however, that her failure to file a Rule 191(b) affidavit does not

preclude judgment in her favor. She relies on *Besco v. Henslee, Monek & Kenslee*, 297 Ill. App.

3d 778 (1998), and *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682 (2000), to support

her claim.

¶ 116   *Besco* is inapposite. In *Besco*, the appellate court found that the trial court imposed an

unduly harsh discovery sanction of barring plaintiffs from naming an expert witness based on their

failure to meet a deadline or appear at a scheduled case management conference. *Besco*, 297 Ill.

App. 3d at 784-85.

¶ 117   Before we explain why *Williams* fails to support the plaintiff's claim, we believe it is helpful to begin with a discussion of a case that followed it; the court's decision in *Jiotis v. Burr Ridge Park District*, 2014 IL App (2d) 121293. In *Jiotis*, the appellate court considered defendants' claim that the trial court abused its discretion by not ruling on his motion for summary judgment, continuing the motion until additional discovery had been conducted, despite plaintiff's failure to file a Rule 191(b) affidavit. *Id*. ¶ 12.

¶ 118   The court noted that there are two separate bases for seeking a summary judgment: (1) the "traditional" method, where the movant affirmatively disproves an element of the nonmovant's case, or (2) a "*Celotex*-type" [2] motion, where the movant establishes that the nonmovant's evidence is insufficient to avoid judgment as a matter of law. *Id*. ¶ 25. The characterization of a motion as traditional or as *Celotex*-type is significant because strict compliance with Rule 191(b)'s affidavit requirement is only applicable to traditional motions. *Id.* ¶ 26. On the other hand, compliance with the requirement is not automatically necessary when a defendant files a *Celotex*-type motion. *Id.* ¶ 26. *Celotex*-type motions require that the nonmovant have an adequate opportunity to conduct discovery before summary judgment is granted. *Id.* (citing *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 692 (2000)).

¶ 119   Having noted the two distinct forms of summary judgment, we now turn to a discussion of *Williams*, a medical malpractice case involving a *Celotex* motion. In *Williams,* a medical malpractice case, the defendants filed a motion for summary judgment based on the injured

---

[2] A "*Celotex*-type motion" references the rule articulated in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

individual's inability to remember how she came to be injured. *Williams*, 316 Ill. App. 3d at 685. The plaintiffs filed a response and attached depositions from multiple witnesses, including two registered nurses and the plaintiff's treating physician. *Id*. at 685-86. The defendants filed a *Celotex*-type reply in which they now asserted that the plaintiffs had no expert testimony to establish the standard of care and a breach of that standard. *Id*. at 687. The plaintiffs moved to strike the motion as untimely because it attempted to circumvent expert discovery. *Id*.

¶ 120   When the trial court denied the plaintiffs' motion to strike that portion of the defendants' motion that sought summary judgment based on *Celotex* grounds, the plaintiffs orally moved for a continuance to obtain the affidavit of an expert to respond to the summary judgment motion. *Id*. The trial court denied the plaintiffs' motion for a continuance and granted summary judgment. *Id*.

¶ 121   On review, the appellate court found that the defendants' motion was insufficient to place the burden on the plaintiffs to come forward with expert opinions where the motion contained no affidavits and only a bare assertion that the plaintiffs failed to establish proximate cause in the absence of expert testimony. *Id*. at 690. Additionally, the court found that the trial court prematurely granted the motion for summary judgment, where the plaintiffs should have been given adequate time to gather evidence-based on the defendants' *Celotex*-type motion *Id*. at 690-91. The trial court erred by denying the plaintiffs' oral motion for a continuance, and the plaintiffs' failure to file a Rule 191(b) affidavit was inconsequential where they sought to continue the hearing on the defendants' premature motion for summary judgment. *Id*. at 690-92.

¶ 122   In this case, unlike *Williams*, we are presented with a hybrid situation where defendants' motion invoked both forms of summary judgment. Plaintiff was placed on full notice that

defendants had alleged a traditional basis for granting summary judgment. Defendants did not bring a premature motion. Nevertheless, we find it unnecessary to decide whether Rule 191(b) strictly applies under these circumstances where we find that plaintiff's actions as a whole were insufficient to require the trial court to *sua sponte* defer the entry of judgment on defendants' motion for summary judgment.

¶ 123  Our conclusion is supported by the marked distinction between this case and *Williams*. In this case, plaintiff effectively abandoned the alternative request contained in her response to defendants' motion for summary judgment by only addressing the traditional basis alleged by defendant as a basis for granting summary judgment in this matter. In light of plaintiff's silence at the hearing, we cannot find that the trial court abused discretion that it was never asked to exercise.

¶ 124  Our conclusion finds support in *Hayward v. C.H. Robinson Co.*, 2014 IL App (3d) 130530. In *Hayward*, the plaintiff died from severe injuries she sustained when her vehicle collided with a tractor-trailer driven by an employee of an independent contractor for the defendant. *Id.* ¶ 1. In the negligence suit that followed, the defendants filed a motion for summary judgment which the plaintiffs opposed. *Id.* ¶ 6.

¶ 125  Prior to a hearing held on the defendants' motion for summary judgment, the plaintiffs filed a motion to compel disclosure of records in the defendants' possession regarding their knowledge of the previous poor safety record of another tractor-trailer company owned by the independent contractor. *Id.* ¶¶ 7, 11. The plaintiffs alleged that they had not previously requested such discovery because they believed they had a sufficient basis for the court to deny the motion for summary judgment. *Id.* ¶ 8.

¶ 126 The trial court set both motions for a combined hearing on the same day. *Id*. The trial court granted the defendants' motion for summary judgment and denied the plaintiffs' motion to compel disclosure in a single written order. *Id*. ¶¶ 22-23.

¶ 127 The appellate court found that the trial court's entry of summary judgment was proper and that it need not address the merits of plaintiffs' motion to compel where:

> "Here, plaintiffs advised the court they were willing to proceed with the motion for summary judgment without the additional discovery. Therefore, we observe the time to establish the plaintiffs' case of negligent hiring against Robinson was at that summary judgment motion hearing. [citation].
>
> Since plaintiffs agreed the court should consider both motions at the same time, without requesting a continuance and further discovery pursuant to Rule 191(b) (Ill. S. Ct. R. 191(b) (eff. July 1, 2002)), once the trial court granted the motion for summary judgment in favor of Robinson, the court did not abuse its discretion in denying plaintiffs motion to compel further discovery at that stage of the proceedings." *Id*. ¶¶ 47-48.

¶ 128 As in *Hayward*, we decline to find that the trial court's actions were in error. Plaintiff cannot establish that the trial court abused its discretion by ruling on defendants' motion for summary judgment on the date that the motion was heard where he acquiesced to having it decided on the basis of the traditional grounds alleged by defendants.

¶ 129                    C. The Trial Court Properly Exercised its Discretion in Striking
                        Paragraphs Four and Five of Plaintiff's Affidavit

¶ 130   In her final claim of error, plaintiff alleges that the trial court erred in striking paragraphs

four and five of her affidavit, which accompanied her response to defendants' motion for summary

judgment. For the reasons that follow, we disagree.

¶ 131                              1. Standard of Review

¶ 132   A court's determination whether an affidavit offered in connection with a motion for

summary judgment complies with Illinois Supreme Court Rule 191 is a question of law subject to

*de novo* review. *Roe v. Jewish Children's Bureau of Chicago*, 339 Ill. App. 3d 119, 128 (2003). In

determining whether an affidavit following a deposition is properly stricken, we consider the

entirety of the deposition testimony. *Chmielewski v. Kahlfeldt*, 237 Ill. App. 3d 129, 134 (1992).

¶ 133                              2. Supreme Court Rule 191(a)

¶ 134   In pertinent part, Supreme Court Rule 191(a) provides:

          "Affidavits in support of and opposition to a motion for summary judgment

          *** shall be made on the personal knowledge of the affiants; shall set forth with

          particularity the facts upon which the claim, counterclaim, or defense is based; shall

          have attached thereto sworn or certified copies of all papers upon which the affiant

          relies; shall not consist of conclusions but of facts admissible into evidence; and

          shall affirmatively show that the affiant, if sworn as a witness, can testify

          competently thereto."

¶ 135                              3. Trial Court's Findings

¶ 136    In ruling on defendants' motion to strike plaintiff's affidavit, the court made the following

findings:

"All right. Thanks. All right. As to the defendants' motion to strike the

affidavit, in the case of *Madden v. F.H. Paschen, S.N. Nielson, Inc.*, 395 Ill. App.

3d 362, it says in pertinent part, an affidavit satisfies the requirements of 191(a) if

-- Rule 191(a) if from the document as a whole, it appears that the affidavit is

based on the personal knowledge of the affiant and there is reasonable inference

that the affiant could competently testify as to its contents.

Conversely, an affidavit will be stricken under Rule 191(a) to the extent

that it contains unsupported assertions and self-serving or conclusory statements.

In *Roe v. Jewish Children's Bureau of Chicago*, 339 Ill. App. 3d 119, it

says in pertinent part, when only portions of an affidavit are improper under

Supreme Court Rule 191(a), the Trial Court should only strike those portions.

In the case of *Beauvoir v. Rush*, 137 Ill. App. 3d 294, it says in pertinent

part, hearsay statements will not be considered except for the purpose of

impeachment.

In the case of *Morris v. Margulis*, 197 Ill. 2d 28, it says in pertinent part, a

party's later submission of an affidavit inconsistent with that party's deposition

testimony will not raise a disputed issue of fact or prevent the entry of summary

judgment.

Paragraphs 4 and 5 of [plaintiff's] affidavit contradict her deposition testimony and will not be considered. Paragraphs 12 and 13 are hearsay and will not be considered. Paragraph 9 is speculative and self-serving. The remaining paragraphs of the affidavit are in direct contradiction with Sections 1.05, 1.06, and 1.07 of the marital settlement agreement which plaintiff initialed and signed. For those reasons, defendants' motion to strike the affidavit is granted."

¶ 137                    4. *De Novo* Review of Plaintiff's Claim

¶ 138    In *Chmielewski*, as in this case, after he was deposed, plaintiff attached an affidavit to his response to the defendant's motion for summary judgment that contradicted his deposition testimony. *Chmielewski*, 237 Ill. App. 3d at 132. Plaintiff maintained that the affidavit should be considered where the defendant's attorney did not take an exhaustive deposition of him and where later-named parties sought to use the deposition to their advantage. *Id*. at 135-36. Plaintiff argued that striking an affidavit on such a basis was improper where it essentially means that a plaintiff could not amend a complaint to add a new theory of liability after a deposition is taken. *Id*. at 136.

¶ 139    The court rejected plaintiff's claim. *Id*. As is relevant to this case, the court held:

"A party may not create a genuine issue of material fact by taking contradictory positions, nor may he remove a factual question from consideration just to raise it anew when convenient. "[Citations.]" Admissions at pretrial depositions which are so deliberate, detailed, and unequivocal, as to matters within the party's personal knowledge, will conclusively bind the party-deponent, and he will not be heard to contradict the admissions at trial. "[Citation.]" The

judicial policy behind this rule, which is well accepted in summary judgment cases, is that once a party has given sworn testimony he should not be allowed to change his testimony to avoid the consequences of his prior testimony." "[Citation.]" *Id*. at 132-33.

¶ 140   In *Morris v. Margulis*, 197 Ill. 2d 28, 36 (2001), plaintiff relied on his affidavit to defeat the defendant's motion for summary judgment where the motion alleged that plaintiff's complaint was untimely. The court found plaintiff's reliance to be misplaced:

"This affidavit, however, contradicts his deposition testimony, and we have held previously that a party's later submission of an affidavit inconsistent with that party's deposition testimony will not raise a disputed issue of fact or prevent the entry of summary judgment." *Id*. at 37 (citing *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 422 (1991)).

¶ 141   Here, plaintiff alleges that the trial court erroneously struck paragraphs four and five of her affidavit, wherein plaintiff alleged that she never told Bush that she did not want her to conduct discovery and that Bush did not encourage or advise her that discovery was necessary.

¶ 142   We agree with the trial court's determination that these allegations contradicted plaintiff's deposition testimony wherein she admitted that defendant was the one who raised the issue of conducting additional discovery, admitted receiving January 14, 2015 letter that memorialized the substance of the conversation held by plaintiff and Bush that same day, and never contested its contents after being confronted with the letter during her deposition. Additionally, the letter instructed plaintiff to immediately contact her if anything contained in the letter did not comport

with plaintiff's account of what had transpired that day, yet plaintiff took no further actions to countermand Bush's understanding of plaintiff's wishes as expressed in the letter. Based on the foregoing, we conclude that the trial court properly struck paragraphs four and five of plaintiff's affidavit.

¶ 143   We further reject plaintiff's undeveloped claim that the trial court also erred by disallowing her to file an amended affidavit. In the proposed amended affidavit, which was offered in support of plaintiff's motion to reconsider, plaintiff now alleged, *inter alia*, that she never received Bush's January 14, 2015 letter.

¶ 144   The trial court has discretion as to whether to consider new evidence presented for the first time after a motion for summary judgment. *Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 617 (1995). A party may not submit new evidence in a motion to reconsider following a ruling on a motion for summary judgment without providing a reasonable explanation as to why the evidence was late. *Delgatto v. Brandon Associates, Ltd.*, 131 Ill. 2d 183, 195 (1989).

¶ 145   We reject plaintiff's unsupported apparent belief that a motion to reconsider a trial court's granting of a motion to strike an affidavit is an appropriate vehicle for curing an otherwise defective affidavit by supplanting it with a new one as was done in this case. Even if we could imagine a circumstance where such an amendment might be allowed, in this case, this newest iteration of plaintiff's complaint is flatly contradicted by her deposition testimony wherein she admitted receiving Bush's letter. In sum, we reject plaintiff's contention of error.

¶ 146                                    III. CONCLUSION

¶ 147   For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 148   Affirmed.